Marilyn Fish MOKWA, Appellant,

v.

The CITY OF HOUSTON, Appellee.

No. 01–86–0699–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 17, 1987.

Rehearing Denied Nov. 5, 1987.

Clinard J. Hanby, Haynes & Fullenweider, Houston, for appellant.

Jerry E. Smith, City Atty., John E. Fisher, Sr. Asst. City Atty., Brenda Loudermilk, Belinda Turner Saulsberry, Asst. City Attys., Houston, for appellee.

Before EVANS, C.J., and COHEN and HOYT, JJ.

## OPINION

COHEN, Justice.

Marilyn Mokwa appeals from a take-nothing judgment rendered in her suit against the City of Houston. Mokwa sought to recover back pay from the city, pursuant to Tex.Rev.Civ.Stat.Ann. art. 1269m, sec. 8(b), and art. 1269q, sec. 4 (Vernon 1987). She claimed that these statutes entitled her to increased pay for performance of job duties classified at a higher pay rate than her job classification.

Mokwa, a police officer, was employed by the City as a fingerprint classifier in the identification division of the Houston Police Department. The record reflects that police department employees are divided into classes and grades. Class B employees, like Mokwa, are nonpatrol officers, whose grades are labeled I through VIII. The instant dispute began May 1, 1982, when Mokwa was a fingerprint classifier I, class B, grade III employee. After October 1983, Mokwa was a fingerprint classifier II, class B, grade IV.

Mokwa contended: (1) that on various dates between May 1, 1982, and July 9, 1983, while classified as a fingerprint classifier I, grade III, she worked as an identification supervisor, grade V; (2) that on various dates between October 1, 1983, and February 9, 1986, while classified as a fingerprint classifier II, grade IV, she worked as an identification supervisor, grade V; (3) that on various dates, between November 8, 1982, and April 20, 1983, while classified as a fingerprint classifier I, grade III, she worked as a fingerprint classifier II, grade IV; and (4) that between May 1, 1982, and September 30, 1983, part of the compensation of grade IV and V employees, was the use of a city vehicle, and that for 166 days during this time, she worked as a grade IV or V employee without the use of a city vehicle.

The trial court made findings of fact that Mokwa's factual allegations were true, and that the value of the automobile use totaled $2,680.90. Our calculations reflect that difference in the pay levels, when arithmetically extrapolated according to the fact findings, total $7,198.04. Other relevant findings of fact are as follows:

1. Prior to October 12, 1983, it was customary practice and policy in the Houston Police Department that no additional compensation was paid to an officer for performing temporarily the duties of a person in a higher classification.

2. Prior to October 12, 1983, no officer in the same classification as Marilyn Fish Mokwa, or in any other classification in the Houston Police Department, received additional compensation (Higher Classification Pay) for performing the duties of a higher classified employee.

3. During the times relevant to this cause of action, Ms. Mokwa was the officer with the most seniority on her shift.

4. It was customary practice and policy in the Houston Police Department that the person with the most seniority on any shift would perform additional duties in the temporary absence of a supervisor. No higher classification pay would be paid in such instances.

5. The Police Department, in accordance with the Department's Administrative Notice 83–398, dated October 12, 1983, authorized higher classification pay subject to the following primary conditions:

a. temporary absence of a person in a higher classification for five working days or longer;

b. such absence was for a bona fide reason;

c. approval and designation of higher classification pay had to be in writing by Chief of Police;

d. the designated person had to hold the position of Grade VI in Class A or Grade VII of [sic] Class B and C;

6. The Police Department has never paid higher classification pay to any person in the same classification as held by Ms. Mokwa and with the most seniority for performing additional duties in the temporary absence of a supervisor.

7. Ms. Mokwa was not eligible under Administrative Notice 83–398 to receive additional compensation.

10. From 1982, to the present, Ms. Mokwa at times temporarily performed the duties of higher classified positions.

11. Ms. Mokwa was never designated by the Chief of Police to receive higher classification pay.

13. The Houston Police Department provided a grievance procedure whereby Ms. Mokwa could grieve her rate of pay.

15. Ms. Mokwa never grieved her rate of pay through the departmental grievance procedure.

This case requires an interpretation of article 1269m, section 8(b), and article 1269q, section 4. Article 1269q, section 4 provides:

All municipal and county governments affected by this Act, shall, within thirty (30) days following enactment, set up classifications in the Sheriff's, Police, and Fire Departments providing for duties under such classifications and specifying salary for each classification; and thereafter *any member of any Sheriff's, Fire, or Police Department who is called upon to perform the duties under any such classification shall be paid the salary provided therefor for such period as he performs such duties.* (Emphasis added.)

Article 1269m, section 8(b) provides:

Except as expressly provided by Subsection (f) of this section, *no classification* now in existence, or that may be hereafter created in such cities, *shall ever be filled except by examination held in accordance with the provisions of this law.* All persons in each classification shall be paid the same salary and in addition thereto be paid any of the following types of pay that they may be entitled to: (1) longevity pay; (2) seniority pay; (3) educational incentive pay; or (4) assignment pay. *This shall not prevent the Head of such Department from designating some person from the next lower classification to fill a position in a higher classification temporarily, but any such person so designated by the Head of the Department shall be paid the base salary of such higher position plus his own longevity pay during the time he performs the duties thereof.* The *temporary performance of the duties* of any such position by a person who has not been promoted in accordance with the provisions of this Act *shall never be construed to promote such person.* All *vacancies* shall be filled by permanent appointment from eligibility lists furnished by the Commission within sixty (60) days after such *vacancy* occurs. If no list is in existence, the *vacancy* shall be filled from a list which the Commission shall provide within ninety (90) days after such *vacancy* occurs. (Emphasis added.)

In its conclusions of law, the trial court held:

2. Under Article I, section 34–2 (of the City of Houston ordinances), the Chief of Police has discretionary power to designate in writing the person from the next lower classification to fill temporarily a higher classification and to be paid at the higher rate.

3. TEX.REV.CIV.STAT.ANN., Article 1269m, section 8(b) does not prohibit or

mandate higher classification pay for the City of Houston Police Department.

4. Under Article 1269m, section 8(b), the Chief of Police has discretionary power to designate when higher classification pay will be received.

5. Ms. Mokwa was not designated by the Chief of Police to fill a position of higher classification and was not entitled to pay at the higher rate.

6. Article 1269m determines any entitlement to higher classification pay for police officers in the City of Houston.

7. Any entitlement Ms. Mokwa has is determined by Article 1269m, section 8(b), not Article 1269q.

8. Ms. Mokwa has no property interest in higher classification pay under Article 1269m until she has been designated by the Chief of Police for such pay.

12. Any claim asserted by Ms. Mokwa prior to February 11, 1983, is barred by the two year statute of limitations.

■ The City's first cross-point contends that the trial court lacked jurisdiction over the subject matter. Jurisdiction has been upheld for similar claims. *City of Galveston v. Russo*, 508 S.W.2d 882 (Tex.Civ.App. —Houston [14th Dist.] 1974, writ ref'd n.r. e.). We find that the trial court had jurisdiction.

■ The City argues under this cross-point that Mokwa failed to exhaust her administrative remedies. However, the City's own answer states that Mokwa "filed and pursued each step of the Department's grievance procedures" and that she received a "final review" by the Civil Service Commission, "according to established procedure." This is supported by uncontradicted evidence that Mokwa unsuccessfully pursued her grievance through all necessary stages. We note that the comprehensive grievance procedure of article 1269m, section 29, did not become law until September 1, 1985, nearly seven months after this suit was filed. The City's first cross-point is overruled.

We sustain Mokwa's second point of error, that there is no evidence to support the trial court's finding of fact no. 15, that "Mokwa never grieved her rate of pay through the departmental grievance procedure."

■ The City contends in its second cross-point that there was legally and factually insufficient evidence to support trial court's fact findings 23, 24, and 25, which are as follows:

23. Between May 1, 1982, to September 30, 1983, part of the remuneration for both Identification Officer Supervisor, Grade V and Fingerprint Classifier II, Grade IV was the use of a city vehicle.

24. Between May 1, 1982, and September 30, 1983, plaintiff worked 166 days as either an Identification Officer Supervisor, Grade V or a Fingerprint Classifier II, Grade IV without the use of a City vehicle.

25. Between May 1, 1982, and September 30, 1983, the fair and reasonable value of use of a City vehicle in and around Harris County, Texas was $16.15 per day.

Mokwa testified, without objection, that between May of 1982 and September of 1983, Grade IV and V employees had the use of City vehicles, that when she was promoted to Grade IV, she was also given the use of a City vehicle, and that in 1985, there was a salary adjustment for some employees when the cars were taken away and placed in a general pool for use only for specific assignments. She also testified, without objection, that the value of "having a city vehicle" was $350 per month, or $16.15 per day.

Lieutenant Robert Martin, of the Houston Police Department Personnel Division, testified that, during the relevant time, the City assigned automobiles "based on an administrative decision to go pick up a car. There was no basis for an individual to receive one or not. It was not structured at all." He also testified that he could not deny that all Grade IV and V employees in the police department were assigned vehicles. The record also reflects that some employees were given a car allowance of $350 per month.

In considering a legal sufficiency, or no evidence, point, we view the evidence in the

light most favorable to the finding, considering only the evidence and inferences therefrom that support the finding, and rejecting all other evidence and inferences. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 513, 235 S.W.2d 609, 613 (1950). In considering a factual sufficiency point, we evaluate all the evidence, and reverse the judgment only if the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *In re King's Estate*, 150 Tex. 662, 665, 244 S.W.2d 660, 661 (1951). When there is conflicting evidence on a fact question, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

There is evidence supporting the trial court's findings, and they are not against the great weight and preponderance of the evidence.

The City's second cross-point is overruled.

Mokwa contends, in subpoints a and b of her first point of error, that the trial court erred in its conclusions of law that only the Police Chief, personally, may designate when higher classification pay will be received under article 1269m, section 8(b), and that only article 1269m, and not article 1269q, applies to this case. (Conclusions of law 3 through 7, above). Accordingly, we must decide whether Mokwa is entitled to receive compensation under either article 1269m, section 8(b), or under article 1269q, section 4, or both.

The City first argues that the point of error is multifarious and should not be reviewed. This contention has no merit. *See* Tex.R.App.P. 74(*o*), (p). Moreover, the City's cross-points are more multifarious than Mokwa's.

Mokwa argues that the court erred in holding that only the Chief of Police, personally, had authority, under article 1269m, section 8(b), to temporarily designate her to fill the higher position. She asserts that the Chief of Police may act through his agents, and therefore, she was designated within the meaning of 8(b) when her superiors directed her to work in the higher classifications. It is undisputed that appellant was directed in writing by superiors in the department to perform the work of a higher job classification on approximately 268 days over a 45–month period. However, she was never designated by the Chief of Police to fill these positions.

In deciding whether only the Chief of Police may designate, we look to the Texas Government Code, which provides that: (1) "words shall be given their ordinary meaning," section 312.002(a); (2) "a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy," section 312.-005; and (3) the "Revised Statutes ... shall be liberally construed to achieve their purpose and to promote justice," section 312.-006(a).

The common meaning of the term, "Head of the Department," as well as the statute's interchangeable use of "Police Chief," "Fire Chief," and "Head of the Department," indicates that "Head of the Department" was intended to refer only to the Chief of Police and not to subordinate division heads. *See* art. 1269m, secs. 8(c), (d).

*Walker v. City of Houston*, 466 S.W.2d 607 (Tex.Civ.App.—Houston [14th Dist.] 1971, no writ), relied on by appellant, is distinguishable. It involved a different section of article 1269m that was unrelated to the rights claimed by appellant.

Section 8(b) was intended to insure that "civil service requirements for promotion will not interfere with temporary duty assignments." *Russo*, 508 S.W.2d at 885. While requiring that permanent positions be filled only through competitive civil service examinations, the legislature, recognizing the need for flexibility, allowed "vacancies" to be filled by temporary designations by the "Head of the Department." The statute also protects the officer designated to fill a temporary vacancy by requiring that he or she be paid more for assuming more responsibility. The statute preserves the foundation of the civil service reform movement, that advancement be based on

competitive examination, by providing that, "the temporary performance of duties ... shall never be construed" as a promotion, and by requiring that vacancies be filled within 60 days from lists based on examination results.

Vesting in the Chief of Police the exclusive power to make temporary designations without competitive civil service examinations is a way to insure accountability. It provides a strict limit on promotions made without a civil service examination, and it fixes sole responsibility on the Chief of Police for these decisions. This promotes the statute's purpose of protecting police from political favoritism or retribution. Allowing the many mid-level managers in a large urban department to grant sizable pay and benefit raises without competitive exams would greatly diffuse responsibility for these sensitive decisions, and simultaneously increase the opportunities for cronyism. That would deprive Houston police officers of valuable job protection that the legislature has granted them.

We therefore hold that the term "Head of the Department" is limited to the Chief of Police. Because Mokwa was never designated by the Chief of Police to fill any vacant higher position, she has no claim under article 1269m, section 8(b). Subpoint a of the first point of error is overruled.

We now decide whether Mokwa has a claim under article 1269q, section 4, as she contends in sub-point b of point of error one.

Article 1269q was first enacted as article 1583–2 of the 1925 Texas Penal Code. Ch. 143, sec. 1, 1947 Tex.Gen.Laws 246. As originally enacted, article 1583–2 dealt only with a minimum wage for policemen and firemen. In 1949, article 1583–2 was amended. Ch. 522, 1949 Tex.Gen.Laws 951. The amendments increased the minimum wage and added section 3, which is the current section 4 of article 1269q. The minimum wage provisions of section 1 were again amended in 1951, ch. 390, sec. 1, 1951 Tex.Gen.Laws 674; in 1953, ch. 168, sec. 1, 1953 Tex.Gen.Laws 481; in 1969, ch. 236, sec. 1, 1969 Tex.Gen.Laws 691; and in 1973, ch. 218, sec. 1, 1973 Tex.Gen.Laws 506.

In 1973, article 1583–2 became article 1269q because of the codification of the Texas Penal Code. Ch. 399, sec. 5, 1973 Tex.Gen.Laws 995. Article 1269q was again amended in 1983. Ch. 433, 1983 Tex. Gen.Laws 2432. The 1983 amendments made additions to the minimum wage provisions and expanded the scope of article 1269q to include deputy sheriffs. The amendments to the scope of article 1269q were expressly incorporated in section 4 of the article.

Article 1269m was also first enacted in 1947. Ch. 325, 1947 Tex.Gen.Laws 550. Section 8 of article 1269m originally provided that the civil service commission and the City council were to provide for the classification of all police officers and fire fighters. In 1949, section 8 was amended, and a paragraph similar to the current section 8(b) was added. Ch. 572, sec. 2, 1949 Tex. Gen.Laws 1114, 1115. Although section 8 was amended in 1973, and twice in 1979, the next significant amendments occurred in 1983. Ch. 420, sec. 2, 1983 Tex.Gen. Laws 2246, 2247. The 1983 amendments limited the applicability of section 8 to cities with a population exceeding 1,500,-000, and created section 8A, which contains a provision similar to section 8(b) for cities with a population under 1,500,000. *See* Tex.Rev.Civ.Stat.Ann. art. 1269m, sec. 8A(d) (Vernon Supp.1987).

The continued reenactment of article 1269m, section 8(b) and article 1269q, section 4, often during the same legislative session, indicates that the legislature did not intend for article 1269m, section 8(b), to repeal article 1269q, section 4, and that the legislature did not view the two statutes as conflicting.

█ Article 1269m, section 8(b) provides that the examination requirement *"does not prevent* the Head of such Department from designating" a temporary replacement for a vacant position. It does not, however, provide that *designation* by the Police Chief is the exclusive method by which an officer may be "called upon to perform the duties" of a given classifica-

tion, as provided by article 1269q, section 4, nor does it prohibit higher classification pay to those not officially designated by the Chief of Police. Moreover, the repeated reference in section 8(b) to "vacancies" indicates that designation by the Chief of Police *under that section* is appropriate only when the higher job is vacant. The meaning of "vacant" in this context is that the former holder of the position has left it permanently, or for a significant period of time. Indeed, the trial court's fifth finding of fact was that the Department had authorized higher classification pay under section 8(b) only for "temporary absence" lasting five or more working days. Section 8(b) provides that all "vacancies" temporarily filled by designation of the Chief of Police "shall be filled by permanent appointment from eligibility lists furnished by the Commission within sixty (60) days after such vacancy occurs."

■ We therefore hold that article 1269m, section 8(b), applies where there is a "vacancy." It does not apply in this case, where no "vacancy" existed. There were merely "temporary absence(s)" of Mokwa's supervisor, not vacancies in the position of supervisor. *See* Findings of Fact Nos. 4, 5, 6, 10, quoted above. In these circumstances, article 1269q controls. There is no conflict because it is reasonable for the legislature, in article 1269m, section 8(b), to have required greater accountability in filling "vacancies" for periods of up to 60 days than it did in merely filling irregular, temporary absences, like those Mokwa was "called upon to perform."

Article 1269m and 1269q were both intended to eliminate favoritism and to assure that officers were paid for the job that they performed. To hold that designation by the Chief of Police is the exclusive method to be paid for performing duties above an officer's formal classification would allow the department to require such duties without paying the officer for the additional responsibility. This result, which the City urges, would defeat the purpose of article 1269q, section 4.

■ The record reflects that Mokwa was directed by her superiors to perform substantial duties above the scope of her classified position. The trial court found that this occurred on 268 days over a 45-month period, that is, approximately 27% of the time, or one day out of four, assuming a five-day work week. When officers are "called upon to perform the duties" of a higher pay classification, article 1269q requires that they be compensated accordingly, even though there may not be a "vacancy," as provided in article 1269m, section 8(b), or a five-day absence, as provided in the Department's Administrative Notice 83–398, of October 12, 1983.

We find no authority for the department's administrative rules to limit the protection granted to officers by article 1269q. Indeed, notice 83–398 is apparently an attempt to comply with article 1269m, section 8(b) because of its requirement of designation by the Chief of Police.

■ We decline the City's invitation to hold that article 1269m is the more specific statute, thereby relegating article 1269q to an inferior position because it is general. Articles 1269m and 1269q were intended to co-exist, not to be mutually exclusive. We are bound to construe potentially conflicting statutes in a way that will give meaning to both, and nullify neither. Construing article 1269m, section 8(b), and article 1269q, section 4 in harmony and giving full effect to both, we hold that an officer is *eligible for compensation of a higher classification if the Chief of Police designates the officer to temporarily fill a* vacant *position, under article 1269m, or if the officer is "called upon to perform the duties" of the position, under article 1269q.*

Considering the old law, the evil, and the remedy, we hold that Mokwa was entitled to compensation under article 1269q, section 4, and that she was not precluded from receiving it by article 1269m, section 8(b).

Subpoint b of the first point of error is sustained.

■ In subpoint c of her first point of error, Mokwa contends that the trial court erred in holding that her claims for periods before February 11, 1983 were barred by the two year statute of limitations. Tex.

Rev.Civ.Prac. & Rem.Code sec. 16.004 (Vernon 1986) provides that a four-year statute of limitations is applicable to an action for debt. We hold that Mokwa's suit was an action for debt.

■ It is well established that "debt," as used in the limitations statutes, is broadly construed and includes liability based solely on statutes. *Rose v. First State Bank,* 122 Tex. 298, 299, 59 S.W.2d 810, 811 (1933); *see also Int'l Printing Pressmen and Assistants' Union v. Smith,* 145 Tex. 399, 409–13, 198 S.W.2d 729, 736–38 (1946). Thus, statutory causes of action brought by emergency medical technicians to recover back pay are within the four-year statute of limitations. *Kierstead v. City of San Antonio,* 643 S.W.2d 118, 120–21 (Tex.1982).

Every case to the contrary cited by the City was decided under former Tex.Rev. Civ.Stat.Ann. arts. 5526 and 5527, *repealed by* Act of Sept. 1, 1985, ch. 959, sec. 9, 1985 Tex.Gen.Laws 3242, 3322, (now Tex.Rev. Civ.Prac. & Rem.Code secs. 16.003, 16.004, respectively), prior to the 1979 amendments. The amendments, which govern this case, eliminated the former distinction between debts evidenced by a writing, which were governed by the four-year statute, and debts not evidenced by a writing, which were governed by the two-year statute. *See* ch. 716, secs. 1, 2, 1979 Tex.Gen. Laws 1768, 1769. Under section 16.004, all actions for debt have but one limitation period, four years, and all of Mokwa's claims were brought in time.

■ Even if Mokwa's claims were not for "debt," within the meaning of section 16.004, they would still be governed by the four-year statute, section 16.051, which provides that any action not covered by a specific limitations statute may be brought within four years.

Subpoint c of the first point of error is sustained.

The judgment of the trial court is reversed, and judgment for the appellant is rendered. We remand the cause to the trial court for it to calculate and enter judgment for the total amount of damages,[1] together with prejudgment interest, attorney's fees, and costs.

---

1. Mokwa's actual damages for loss of use of an automobile were found by the trial court to have been $2,680.90. Her total damages for lost pay were found by the court at certain daily rates and for a given number of days at each rate, although these rates were not multiplied by the number of days in each classification and totaled. We calculate this figure, based on the trial court's findings, at $7,198.04. Calculating the prejudgment interest will be a lengthy task, in view of the fact that there were damages incurred on many dates covering many different pay periods. Rather than render judgment for actual damages of $9,878.94 ($2,680.90 + $7,198.04) and remand to the trial court solely for calculation of the amount of prejudgment interest, we think the better remedy is to allow the trial court to enter judgment for the total damages, based on its fact findings.