In the Matter of LaJET, INC., Debtor.

John T. PENDER, Trustee,

v.

TEXAS NAPCO, INC.; Lajet Petroleum Company; Lajet Energy Company; LEC Solar Partners 1983–1; North American Petroleum Corporation; Flare Energy Corporation; Jack V. McGlothlin; Hal T. McGlothlin; Tony D. Andress, Sr.; Orin C. Crane; Robert A. Trevisani; and Robert Nabbefeld, Defendants.

Bankruptcy No. 87–01581.
Adv. No. 91–1053–JAB.

United States Bankruptcy Court,
E.D. Louisiana.

Feb. 5, 1993.

■■■■■■■■■■■■■■

Harvey C. Koch, Howard Marks, New Orleans, LA, William A. Zucker, Boston, MA, for Robert A. Trevisani.

Paul T. Michael, Economic Regulatory Admin., U.S. Dept. of Energy, Washington, DC, for U.S. Dept. of Energy.

Joseph E. Friend, New Orleans, LA, Lee Haag, Houston, TX, for NAPCO, Inc., et al.

## MEMORANDUM OPINION

JERRY A. BROWN, Bankruptcy Judge.

On September 21, 1992, this matter came before the Court as a hearing on the motion of defendant Robert A. Trevisani ("Trevisani") for summary judgment and on cross-motion of Plaintiff/Intervenor, Department of Energy ("DOE") for partial summary judgment. The last post-hearing memoranda was filed, and the matter was taken under advisement on October 9, 1992. Considering the statements of counsel, the memoranda filed, the applicable law and the record in the case, the Court will enter an order granting Trevisani's motion for summary judgment and denying the DOE's motion for partial summary judgment.[1]

## BACKGROUND

The complaints of both the Trustee and the DOE allege that Trevisani, a resident of Massachusetts, while acting as a director for LaJet, Inc., voted for a dividend, or assented to a distribution of assets in June 1983 in favor of LaJet's parent corporation and sole stockholder, defendant Flare Energy Corporation ("Flare"). This action is allege to have rendered LaJet insolvent. Both the trustee's complaint

and the complaint in intervention allege: a) under Count III that Trevisani caused La-Jet to declare a dividend that was intended to hinder, delay or defraud creditors of LaJet in violation of sections 24.02(a)(1) or 24.04(a)(2) of the Texas Fraudulent Transfer Act ("TFTA"); b) under Count IV that Trevisani caused a dividend to be paid without fair consideration being received by LaJet while LaJet was insolvent under Section 24.03(a) of the TFTA, making the dividend voidable under Section 544(b) of the Bankruptcy Code; c) under Count V that Trevisani's action as a former director violated articles 2.38, 2.40A(1) and 2.41 of the Texas Business Corporation Act ("TBCA") in declaring or causing to be declared a dividend while LaJet was insolvent; and d) under Count VI that Trevisani breached his fiduciary duty to LaJet in declaring and causing to be paid the dividend while LaJet was insolvent.

The relevant dates are as follows:

| | |
|---|---|
| June 29, 1983 | Occurrence of conduct giving rise to claims of DOE and Trustee. |
| August 1984 | LaJet transferred to D.D. Corporation. |
| April 10, 1987 | Involuntary Chapter 7 bankruptcy petition filed. |
| August 31, 1987 | Effective date of amendment to article 2.41 of TBCA providing two-year limitations period. |
| September 2, 1987 | Case converted to Chapter 11 and Order for relief entered. |
| February 23, 1989 | Trustee appointed. |
| March 1989 | Date DOE and Trustee state they discovered claims. |
| April 8, 1989 | Trustee files first adversary proceeding. |
| February 7, 1991 | Case converted to Chapter 7. |
| February 22, 1991 | Trustee files second adversary proceeding. |
| April 4, 1991 | DOE moves to intervene in Trustee's second adversary proceeding. |

---

1. This Memorandum Opinion constitutes the Court's Findings of Fact and Conclusions of Law in accordance with the provisions of Bankruptcy Rule 7052. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference. This matter is a core proceeding under 28 U.S.C. § 157(b).

On March 20, 1992, Trevisani filed a motion for summary judgment on all four counts. Trevisani asserts that he never conveyed or received any of the $5,000,-000.00 transferred to Flare; therefore, no claim exists for fraudulent conveyance under Texas law and Counts III and IV must be dismissed. Also, he contends that Counts V and VI have a two-year limitations period and are time barred both under the Code and Texas law, and that the counts are barred because the facts do not establish that Mr. Trevisani, as a director, voted any dividend.

Thereafter, the DOE filed a motion in opposition to Trevisani's motion for summary judgment and in support of its cross-motion for partial summary judgment on Counts V and VI. The DOE contends that it is entitled to judgment on Counts V and VI as a matter of law; that Texas law provides a four-year statute of limitation for asserting claims; that the claims had not expired when the bankruptcy petition was filed; and that the claims are not barred because the Trustee and DOE filed complaints within four years of discovering the instant actions in early 1989. The DOE asserts that under the doctrine of adverse domination, the Texas limitations statutes are tolled while culpable directors control a corporation. As a consequence, the DOE asserts that it could not have discovered the instant claims until early 1989, and that the claims in Counts V and VI were therefore timely when filed in 1991. Alternatively, the DOE asserts that the second adversary proceeding, filed on February 22, 1991, amends and relates back to the first adversary proceeding filed April 8, 1989.

DOE also submits that the court should deny Trevisani's motion for summary judgment, or in the alternative, stay its ruling on such motion until DOE has completed discovery on certain contentions raised by Trevisani in support of his motion.

Trevisani has responded that the Texas limitations statute, found in a 1987 amendment to article 2.41, is a "statute of repose" and that the DOE's claims under the TBCA therefore expired in 1985 (two years after the transaction) or in 1989 (two years after enactment of the statute of repose). The DOE's response is that article 2.41(3), as amended in 1987, is not a statute of repose and that such provision should not be retroactively applied to an action which occurred prior to the 1987 amendment. Trevisani contends that he is entitled to summary judgment on Counts V and VI because the alleged discovery by the DOE and the Trustee in March 1989 of the claims against Trevisani is irrelevant; that the 1987 amendment is a statute of repose, and that the DOE's cause of action did not accrue until after the statute's effective date thereby making the statute of repose applicable to the DOE's cause of action.

## SUMMARY JUDGMENT ON COUNTS III AND IV

Both the Trustee's and DOE's complaints make claims against Trevisani, in Count III under §§ 24.02(a)(1) and 24.04(a)(2) of the TFTA and in Count IV under § 24.03(a) of the TFTA.[2] The complaints assert that on or about June 27, 1983, LaJet, through its new board of directors, declared a $5 million cash dividend in favor of its parent corporation and sole stockholder, defendant Flare Corporation; that at the time LaJet was insolvent and could not pay all of its creditors; that Trevisani was either an initial transferee for whose benefit the dividend was named or an immediate or mediate transferee of the initial transferee for whose benefit the dividend was made. Trevisani asks for summary judgment in his favor on Counts III and IV on the grounds that he never conveyed or received any funds, either directly or indirectly, and thus no claim can exist for fraudulent conveyance under Texas law. The DOE, in its

---

**2.** Tex.Bus. & Comm.Code Ann. § 24.03(a) (Vernon 1968) *repealed* 1987 Tex.Gen.Laws, 70th Leg., ch. 1004, § 1.

memorandum in support of its cross motion for summary judgment, asserts that it requires discovery to respond to Trevisani's claims that he did not convey or receive, directly or indirectly, any of the $5 million that was transferred from LaJet to Flare. Accordingly, it requests the Court to exercise its discretion under Rule 56(f) to stay any ruling on Trevisani's motion until it has an opportunity to complete discovery on the contentions in question.

Summary judgment should be granted if the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the moving party must demonstrate that the claims against it have no basis in fact. The rule also requires the nonmoving party to *"go beyond the pleadings* and … designate *specific facts* showing that there is a genuine issue for trial." *Reese v. Anderson,* 926 F.2d 494, 498 (5th Cir.1991), quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, summary judgment may not be granted unless movers are "entitled to a judgment as a matter of law." *Id.* at 499. The court must determine whether the evidence, viewed in the light most favorable to the non-mover, demonstrates that there is no genuine issue of material fact, and that movers are entitled to judgment as a matter of law. *See Brock v. Republic Airlines, Inc.,* 776 F.2d 523, 527 (5th Cir.1985).

■ Section 544(b) of the Bankruptcy Code permits the trustee to avoid a transfer of property of the debtor that is voidable under applicable law by a creditor holding an unsecured claim. The TFTA, Tex. Bus.Com.Code ann. §§ 24.02–24.04, governs the transfer in question and any remedy to be received by the plaintiff. *See In re Dondi Fin. Corp.,* 119 B.R. 106, 111 (Bankr.N.D.Tex.1990). Suit under the TFTA is generally by the trustee in bankruptcy for the benefit of all creditors. *See In re Mortgageamerica Corp.,* 714 F.2d 1266, 1272 (5th Cir.1983), *citing United Towing Co. v. Phillips,* 242 F.2d 627, 631–32 (5th Cir.1957). However, the remedy afforded "relates entirely to the debtor's fraudulently transferred property and entails no personal liability on the part of those responsible for the transfer." *Id.*

■ Mr. Trevisani denies ever receiving any benefit, either directly or indirectly, from the transfer. Additionally, plaintiff's complaint states that the alleged dividend "was paid to defendant Flare shortly after being declared by LaJet." Moreover, the DOE's Statement of Material Fact As to Which There is no Genuine Issue states that "[o]n June 29, 1983, five million Dollars was transferred by wire from a bank account maintained by LaJet at the First National Bank of Abilene, Texas to a bank account maintained by Flare Energy Corporation." Thus, even DOE's factual recitation does not state that Trevisani received any of the funds. The Court finds that Mr. Trevisani was not the initial transferee of the alleged dividend; and therefore, no action can be had against him to recover the property of LaJet transferred to Flare.

At the hearing on summary judgment, the DOE argued that Trevisani indirectly benefitted from the transfer since he was paid fees through his law firm for work done for Flare. A dividend payment made while a debtor corporation is insolvent may constitute a fraudulent conveyance under the TFTA. *Dondi,* 119 B.R. at 113. Additionally, a transaction may be void as a fraudulent conveyance where the evidence indicates only an indirect transfer of assets. *Mortgagebanc & Trust, Inc. v. Texas,* 718 S.W.2d 865, 868 (Tex.App.—Austin 1986, writ denied). However, the remedy sought here is avoidance of the alleged illegal dividend and recovery of the property transferred from LaJet to Flare. Even if this Court were to assume that the payment constituted a dividend, and not a part of the consideration for the stock transfer, this Court finds that any funds paid Trevisani by his firm for work done on the purchase of LaJet by Flare does not constitute an indirect benefit under the TFTA

which may be voided by this Court. As acknowledged by plaintiffs, the $5 million was paid to Flare, which used most, if not all, of the funds to pay its creditors. Flare may also have paid Gadsby & Hannah, and consequently Trevisani, for services performed in the stock purchase. However, as stated earlier, the remedy afforded a successful claimant relates entirely to debtor's fraudulently transferred property and entails no personal liability on the part of those responsible for the transfer. *Mortgageamerica*, 714 F.2d at 1275; *see also Dondi*, 119 B.R. at 113 (Trustee may recover improper dividend payments made to shareholder). If this Court were to equate the payment of a legal fee to a law firm as an indirect benefit to a director and consequently, a fraudulent transfer, it would be stretching the TFTA beyond the outer limits of its intended scope and would be providing an unrecognized remedy. Accordingly, the Court will grant Mr. Trevisani's motion for summary judgment as to Counts III and IV.

### LIMITATION PERIOD FOR COUNTS V AND VI

Both the DOE and Trevisani acknowledge that article 2.41 was amended in 1987 to provide for a two-year statute of limitations for statutory director's liability. Trevisani asserts that prior to 1987, no express statute of limitations was provided for violations of articles 2.38, 2.40A(1) and 2.41; however, that the articles were construed to have a two-year limitations period and that the 1987 amendment to article 2.41 is a "statute of repose." The DOE asserts that the four-year statutes of limitations provided in Tex.Rev.Civ.Stat.Ann. article 5527 or, in the alternative, in article 5529 would apply to the claims.[3]

Prior to 1979, Article 5527 provided for a four-year limitation period for actions for debt based upon a written contract. For-

mer Article 5529 provided for a four-year limitation period for "[e]very action other than for the recovery of real estate, for which no limitation is otherwise prescribed." However, prior to 1979, Texas courts construed Article 5526, the two-year limitations statute, to apply to actions for damages where liability was created purely by statute, reasoning that such actions were "actions for debt where the indebtedness is not evidenced by a contract in writing." Tex.Rev.Civ.Stat.Ann. art. 5526(4), *repealed* Acts 1985, 69th Leg., ch. 959, § 9, eff. Sept. 1, 1985; *see A.J. Rose v. First State Bank of Paris, Texas*, 122 Tex. 298, 59 S.W.2d 810 (1933). Therefore, prior to 1979, actions to enforce statutory liability under 2.41 of the TBCA and actions to enforce the rights of a corporation against its directors or officers for breach of fiduciary duty to it, were governed by the two-year limitation statutes. *See Maher v. Zapata Corp*, 714 F.2d 436, 463 n. 50 (5th Cir.1983). In 1979, the Texas legislature revised the statutes of limitations applicable to actions for a debt by amending articles 5526 and 5527 to eliminate the distinction between debts evidenced by a writing and other debts. *See Sioux, Ltd., Sec. Litigation v. Coopers & Lybrand*, 914 F.2d 61, 64 (5th Cir.1990). After 1979, the four-year limitations statutes governed all actions for debt. *Williams v. Khalaf*, 802 S.W.2d 651, 656 (Tex.1990); *Mokwa v. Houston*, 741 S.W.2d 142, 149 (Tex.App.— Houston (1st Dist.) 1987, writ denied). "Debt" as envisioned by the limitations statute was broadly construed and included liability based solely on statute. *Mokwa*, 741 S.W.2d at 148 (and cases cited therein).

■ The Texas Supreme Court has concluded that the legislative revision reflected the legislature's intent to change the statute of limitations for common law fraud to four years. *See Williams*, supra.

---

**3.** Articles 5526 and 5527 were amended by 1979 Tex.Gen.Laws, 66th Leg., p. 1768–69, ch. 716, §§ 1–2. As of September 1, 1985, those two provisions, as well as article 5529, were repealed by Acts 1985, 69th Leg., ch. 959, § 9(1),

eff. Sept. 1, 1985, and codified as amended at §§ 16.003 (former article 5526), 16.004 (former article 5527) and 16.051 (former article 5529) of the Texas Civil Practice and Remedies Code.

In *Williams,* the Court noted that, prior to 1979, fraud was subject to the two-year statute of limitation. However because fraud, for limitations purposes, is a debt not evidenced by a writing, the legislative change which eliminated the distinction between debts evidenced by a writing and other debts served to change the limitations period to four years. *Williams,* 802 S.W.2d at 656. This Court concludes that the statute of limitations for breach of the TBCA, which is also construed as an action for debt not evidenced by writing, is subject to a four-year limitations period.

██ Likewise, Texas courts have construed claims for breach of fiduciary duty as a claim for constructive fraud. *See Spangler v. Jones,* 797 S.W.2d 125, 129 (Tex.App.—Dallas 1990, writ denied) (construing *Williams*); *Perez v. Gulley,* 829 S.W.2d 388 (Tex.App.—Corpus Christi 1992, writ denied) (breach of fiduciary duty subsumes claim of constructive fraud, citing *Williams*). As such, the claim for breach of fiduciary duty is also subject to the four-year statute of limitations.

### OPERATION OF 11 U.S.C. § 108.

Section 108 of the Bankruptcy Code provides extensions of time to commence an action, as follows:

(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

██ Because the acts in question occurred at the end of June 1983, and the bankruptcy petition was filed on April 10, 1987, the limitations period under Texas law had not expired when LaJet's bankruptcy petition was filed. Section 108(a) allows the trustee to commence an action in a nonbankruptcy proceeding within the period allowed for such proceeding or within two years after the order for relief, whichever is later. *United States Use of American Bank v. C.I.T. Const., Inc.,* 944 F.2d 253 (5th Cir.1991). In his role as successor to the debtor, the trustee is afforded the longer of the state statute of limitations, including its tolling provisions, or two years after the order for relief. *Ambrose Branch Coal Co., Inc., v. Tankersley,* 106 B.R. 462, 465 (W.D.Va.1989) (Section 108(a) requires application of applicable state tolling rules); *In re Ahead by a Length, Inc.,* 100 B.R. 157, 165 (Bankr.S.D.N.Y.1989). Conversion of a case from Chapter 11 to Chapter 7 will not extend the grace period contained in § 108(a). *Matter of Phillip,* 948 F.2d 985, 987 (5th Cir.1991).

The Court concludes that, barring application of any relevant state tolling provision, the suits have prescribed. Because the four-year statute of limitations would have run soon after the instant bankruptcy filing, Section 108(a) operated to extend the limitations period to two years after entry of the order of relief. The order for relief was entered on September 2, 1987. The Trustee's action was filed in February 1991. Barring the application of a tolling provision, the Trustee's complaint is clearly time barred.

### TOLLING OF THE ACTIONS

The DOE contends that the applicable statutes of limitations under Texas law did not begin to run until the cause of action was discovered or might have been discovered through reasonable diligence. The DOE submits that the claims were not discovered until early March 1989 and, therefore, the claims filed in February 1991 were timely.

The DOE asserts that prior to June 27, 1983, defendants Jack V. McGlothlin, Hal T. McGlothlin and Tony D. Andress ("the Abilene Group") through stock ownership, or common or interlocking executive positions, or common or interlocking memberships on boards of directors, owned, operated or controlled defendant Texas NAPCO, Inc., McTan Corporation, McTan Refining Corporation and LaJet, and that the Abi-

lene Group defendants were partners in Petroleum Consultants' Services ("PCS"). On June 27, 1983, LaJet and McTan Refining entered into a Contract for Management Services with PCS to manage those two entities. On the same date, defendant Flare agreed to purchase the stock of La-Jet and McTan Refining, and acknowledged the Management Contract between PCS and LaJet/McTan Refining. DOE asserts that the purpose of the Management Contract was to permit the Abilene Group, through their control of PCS, to retain and exercise dominion and control over LaJet. However, the DOE acknowledges that subsequent to the sale of LaJet's stock to Flare, none of the principals associated with Flare, including Trevisani, had any involvement in or control over the business affairs of LaJet. Instead, those matters were handled by the Abilene Group. Subsequently, in early 1984, the LaJet stock was sold to D.D. Corporation; however, the DOE asserts that the Abilene Group continued to exercise dominion and control over LaJet. After the filing of the bankruptcy petition, counsel for Overmyer, who is alleged to be the managing officer of LaJet, notified PCS that LaJet was terminating the Management Contract. DOE claims that, until that time, LaJet was unaware of the diversion of assets. It argues that, until the Trustee was appointed on February 23, 1989, it was unaware that certain assets of LaJet may have been transferred improperly. Additionally, the DOE asserts that because the Abilene Group kept such a tight rein over the facts related to the various transfers it made from LaJet, the DOE and the Trustee could not have discovered these claims during the Abilene Group's control over LaJet.

Texas law holds that the applicable statute of limitation does not begin to run until a cause of action is discovered or might have been discovered through reasonable diligence. *Burton Mill & Cabinet Works, Inc. v. Truemper*, 422 S.W.2d 825, 828 (Tex.Civ.App.—Waco 1967, writ ref'd n.r.e). The discovery rule is applicable to an action for the breach of fiduciary duty. *El Paso Assoc. Ltd. v. J.R. Thurman & Co.*, 786 S.W.2d 17, 20 (Tex.App.—El Paso

1990, no writ), *citing Wakefield v. Bevly*, 704 S.W.2d 339 (Tex.App.—Corpus Christi 1985, no writ). In the instant case, the limitation issue is measured by notice, or not, of the transfer. Texas law holds that actual or constructive notice to officers or directors is notice to the corporation. *See International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 579 (Tex.1963). Once corporate officers have notice, either actual or constructive, they have a duty to act.

> The office of a corporation director or officer is more than nominal, and those assuming the duties and responsibilities of such offices are not justified in neglecting every precaution or investigation; it is their minimal duty and responsibility to protect the corporation against acts adverse to the interest of the corporation, whether perpetrated by fellow directors or by strangers to the corporation.

*Id.*

The DOE is incorrect in asserting in this case that the discovery rule tolls the running of the statute of limitations until the Trustee or the DOE learned of the instant claims in 1989. Instead, the Trustee steps into the shoes of the debtor and is entitled to no additional time to commence an action on the debtor's behalf except as provided in 11 U.S.C. § 108. *See* House Report No. 95–595, 95th Cong., 1st Sess. 318 (1977), U.S.Code Cong. & Admin.News 1978, 5787. Additionally, subject to any limitations or conditions that a bankruptcy court may impose in a specific case, a debtor in possession bears the same responsibility to pursue claims of the estate diligently as would a trustee. 11 U.S.C. § 1107(a); H.Rep. No. 595, 95th Cong. 1st Sess. 404 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6360.

This Court finds that the debtor had actual or constructive notice of the transfer at the latest in 1984, when LaJet was sold to D.D. Corporation. At the time of the sale, all existing officers and directors of both corporations resigned. Additionally, prior to the 1984 acquisition, Mr.

Overmyer, who was associated with D.D. Corporation, conducted an investigation into the financial condition of LaJet and Flare. Mr. Overmyer, who is not named in the instant complaint, had access to the books and records of the corporations while conducting the financial investigation. The Court finds that Mr. Overmyer, who is asserted to be the managing officer of La-Jet, and therefore LaJet, had notice of the transfer from at least 1984. The statute of limitation would therefore have run in the summer of 1988. Due to the intervening bankruptcy of LaJet in April 1987, Section 108(a) provided the debtor with a grace period of either the running of limitations under state law or two years from the order of relief to file the instant adversary proceeding. The instant adversary proceeding was not filed until February 1991. Accordingly, the Court holds that the DOE's and the Trustee's actions under both Counts V and VI were untimely filed.

The DOE argument that the doctrine of adverse domination tolls the applicable statutes of limitations in this matter will not prevail. The Court finds that if any adverse domination of LaJet existed, it terminated in August 1984 when LaJet was sold to D.D. Corporation and the board of directors of LaJet resigned their positions. *See Cruz v. Carpenter*, 893 F.2d 84, 87 (5th Cir.1990) (tolling not merited where corporation no longer under domination of corporate wrongdoers).

## RELATION BACK TO THE FIRST ADVERSARY COMPLAINT

■ The DOE asserts, in the alternative, that the Trustee's second adversary proceeding filed on February 22, 1991, amends and relates back to the Trustee's

first adversary proceeding, filed April 8, 1989.[4] The DOE asserts that Rule 15(a) of the Federal Rules of Civil Procedure would permit the amendment of the first filed complaint at any time prior to the time that a responsive pleading is filed. Moreover, it asserts that relation back to the original complaint is permitted if the claims contained in the complaint in the second proceeding arise from the same occurrences as are stated in the original pleadings.

The difficulty with the DOE's argument is that it has never moved to intervene in or amend the trustee's complaint in the first adversary proceeding. That adversary proceeding, though filed April 8, 1989, has lain dormant. The second adversary complaint was filed as an entirely new proceeding, makes no reference to the first proceeding and cannot be construed as an amendment to the complaint filed in the first adversary proceeding. Therefore, Rule 15, though made applicable to adversary proceedings by Bankruptcy Rule 7015, cannot be invoked.

■ Additionally, even if the Court were to construe the complaint filed in the second adversary proceeding as an amendment to the first adversary proceeding, relation back would not be permitted. Mr. Trevisani was not served with the first complaint.[5] The DOE asserts that no responsive pleading has been filed in the first adversary proceeding and that it can amend as of right. This ignores that the reason that no responsive pleadings were filed was because service was not made on the named defendants. It also ignores that no attempt has been made to date to amend the pleadings in the first adversary proceeding. Moreover, based on the earlier discussion concerning the statute of limita-

**4.** The first adversary proceeding, No. 89–1082, named all of the defendants named in the second adversary proceeding, except Robert L. Nabbefeld. Additionally, the first complaint made claims under the Conveyance Act and RICO; the complaint in the second adversary proceeding added claims under the TBCA and for breach of fiduciary duty.

**5.** Federal Rule 4(j), made applicable to adversary proceedings by Bankruptcy Rule 7004(a), states that:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Thus, the first adversary complaint should have been dismissed years ago.

tions and the discovery rule, it becomes clear that limitations on the causes of action at issue in this matter would have run by the time the second adversary proceeding was filed, unless relation back is allowed.

 While leave to amend shall be freely given when justice so requires, the decision as to when justice requires an amendment is within the discretion of the trial judge. *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986). The Supreme Court has stated that factors such as undue prejudice to the opposing party if amendment is allowed and the futility of the amendment are relevant matters for the court to consider. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Even if the Court were to construe the second adversary complaint as an amendment to the first adversary complaint, an amendment which would be subject to a motion to dismiss, such as where a statute of limitations defense is raised, serves no purpose, and that amendment may be denied. *In re Mufti*, 61 B.R. 514, 517 (Bankr.C.D.Cal. 1986). Moreover, when considering whether relation back is permitted, it is relevant "whether the opposing party has been put on notice regarding the claim ... raised by the amended pleading." Wright & Miller, 6A Federal Practice and Procedure § 1497, pg. 85 (West 1990) (and cases cited therein); *see also Williams v. United States*, 405 F.2d 234, 236 (5th Cir.1968) (notice to opposing party critical in determining relation back under Rule 15(c)). Even if the new causes of action relate to the same conduct, transaction or occurrence, as stated by the DOE, the parties to this action were never served with a copy of the complaint in the first adversary proceeding, and therefore were not put on notice that subsequent amendments based upon the same operative facts was a possibility.

Section 108 operated to extend the time for filing the instant actions to September 1989. The instant adversary proceeding was filed in February 1991, seventeen months after the time for filing had passed. Having concluded that the discovery rule will not operate to extend the time for filing the instant adversary proceeding beyond the two-year grace period provided in § 108, and that the second adversary proceeding does not relate back to the earlier filed dormant adversary proceeding, the claims against Mr. Trevisani for breach of fiduciary duty and under the TBCA are time barred.

## THE 1987 AMENDMENT TO THE TEXAS BUSINESS CORPORATION ACT

 If this Court were to hold that the Trustee and the DOE did not and could not have discovered the instant causes of action until March of 1989, they are still time barred. Mr. Trevisani asserts that Count V of the DOE and Trustee's Complaints are governed by a two-year statute of repose. Article 2.41 of the TBCA was amended on August 31, 1987 to read as follows:

(3) An action may not be brought against a director for liability imposed by this section after two years after the date on which the act alleged to give rise to the liability occurred.

Mr. Trevisani interprets this change as amending the statute to provide for a two-year statute of repose which, if retroactively applied, would cause claims asserted in Count V to expire on June 27, 1985, two years after the transaction. Alternatively, he asserts that the claims would expire two years after enactment of the statute of repose, or on August 31, 1989.

 The DOE asserts that the cause of action did not accrue until 1989, when it was discovered by the Trustee and DOE. However, in *Texas Gas Exploration Corp. v. Fluor Corp.*, 828 S.W.2d 28, 31 (Tex.Civ. App.—Texarkana 1991, writ granted), the court stated that:

Although generally statutes of limitations are statutes that set periods of time within which actions must be brought after they "accrue," and therefore are not retroactive, statutes of repose differ from other statutes of limitations in the sense that the term "statute of repose" refers to a distinct type of statute that cuts off a right of action before it accrues. [citation omitted] As such, [stat-

utes of repose] are distinguishable from the usual statutes of limitations, which operate merely to bar enforcement of a right; these statutes take away the right altogether after the specified … period. The time period begins to run when the improvements are completed or the operations commence, rather than when the cause of action accrues.

*Id.* at 32. The language of the amended statute is clear and unambiguous. It provides that an action such as this against a director must be brought within two years after "the date on which the act alleged to give rise to the liability occurred." The act which is alleged to give rise to the liability occurred in 1983. This Court's duty is to construe statutes as written and ascertain the legislative intent from the language of the act. *Morrison v. Chan*, 699 S.W.2d 205, 207 (Tex.1985). The Court finds that the Texas legislature has specified that the time period for bringing suit begins to run from the date when the act alleged to give rise to the liability occurred. As did the *Morrison* court, this Court finds persuasive that § 2.41 "contains no accrual language and instead imposes an absolute two-year statute of limitations regardless of when the injury was discovered." *Id.*, *quoting Nelson v. Krusen*, 678 S.W.2d 918, 920 (Tex.1984). Accordingly, this Court may not judicially fashion a rule that would extend the date of viability of the cause of action. *Accord Stiles v. Union Carbide Corp.*, 520 F.Supp. 865 (S.D.Tex.1981) (discovery rule did not apply to wrongful death action where Texas legislature clearly and unambiguously stated action must be prosecuted within two years after death of party injured).

■ This interpretation would not violate the "open courts" law,[6] as asserted by the DOE. For a right to be within the Constitution's protection, it must be a vested right or more than a mere expectancy based upon an anticipated continuance of an existing law. *Ellerbe v. Otis Elevator Co.*, 618 S.W.2d 870, 872 (Tex.Civ.App.— Houston [1st Dist.] 1981, writ ref'd n.r.e.),

*appeal dismissed,* 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 39 (1982); *see also Jones v. Pullman Kellogg Corp.*, 785 F.2d 1270 (5th Cir.1986). Application of the statute does no injury to the Texas Constitution because "a party has no vested right to a cause of action." *Texas Gas*, 828 S.W.2d at 31. The court in *Texas Gas* went on to hold that the statute of repose, contrary to the plaintiff's argument that it could not be given retroactive application, could apply and cut off a cause of action against an architect or engineer for design defect where the crack which gave rise to the action occurred eight years prior to the statute's enactment, but was not discovered until twenty three years after the construction of the plant. Accordingly, the Court will enter an order granting Mr. Trevisani's motion for summary judgment on Counts V and VI. An appropriate order will be entered.

## JUDGMENT

On September 21, 1992, this matter came before the Court as a hearing on the motion of defendant Robert A. Trevisani ("Trevisani") for summary judgment and on cross-motion of Plaintiff/Intervenor, Department of Energy ("DOE") for partial summary judgment; considering the statements of counsel, the memoranda filed, the applicable law and the record in the case, and in accordance the foregoing Memorandum Opinion,

IT IS ORDERED, ADJUDGED AND DECREED that Trevisani's motion for summary judgment be, and it hereby is, GRANTED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED the cross-motion for summary judgment by Plaintiff/Intervenor be, and it hereby is, DENIED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Counts III, IV, V and VI of the Trustee's and Interve-

---

**6.** The Texas Constitution provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Texas Const. art. I, § 13.

nor's complaint against Trevisani be, and they hereby are, DISMISSED.