**In re HALPERT & COMPANY, INC., Debtor.**

**Charles M. Forman, Plaintiff,**

v.

**Jeffrey Matthews Financial Group, Llc, Alan P. Halpert, Matthew Cohen, Jeffrey A. Halpert & Linda Halpert, Defendants.**

**Bankruptcy No. 97–22977 (RG).**
**Adversary No. 98–2230.**

United States Bankruptcy Court, D. New Jersey.

Feb. 25, 1999.

Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross by ERic W. Sleeper, Newark, NJ, for Defendant, Alan P. Halpert.

Forman, Holt & Eliades, LLC by Joseph M. Cerra, North Rochelle Park, NJ, for Chapter 11 Trustee.

Greiner & Langer by Charles N. Panzer, Parsippany, NJ, for Defendants, Jeffrey Matthews Financial Group, L.L.C., Matthew Cohen and Jeffrey R. Halpert.

## OPINION

ROSEMARY GAMBARDELLA, Chief Judge.

This matter comes before the Court on the motion of Alan P. Halpert ("Alan Halpert" or "Defendant") for entry of an order pursuant to Federal Rule of Civil Procedure 12(b) made applicable to this case by Federal Rule of Bankruptcy Procedure 7012 to dismiss the causes of action as to Mr. Halpert of the Complaint by Charles M. Forman as Trustee (the "Trustee" or "Plaintiff") to set aside alleged fraudulent conveyances. The Trustee for the Debtor, Halpert and Company, Inc. (the "Debtor" or "Halpert & Co."), alleges that Defendants Alan Halpert, Matthew Cohen, ("Matthew Cohen"), and Jeffrey A. Halpert ("Jeffrey Halpert") fraudulently transferred all or virtually all of the assets of Halpert & Co. to the Jeffrey Matthews Financial Group ("JMFG") in violation of 11 U.S.C. § 548 and New Jersey's Uniform Fraudulent Transfer Act, specifically N.J.S.A. 25:2–25(a); 2–25(b)(1) and (b)(2); 2–27; 2–29. The Trustee ("Trustee" or "Plaintiff") further alleges that Alan Halpert conveyed his interest in certain property in Florida to his wife, Linda Halpert, with the intent to defraud his creditors. Also before the Court is the Trustee's motion to amend the First Amended Complaint. Attached to that motion is a proposed Second Amended Complaint. A hearing on the motions was conducted in this matter on February 4, 1999. The

following is this Court's findings of fact and conclusions of law.

## STATEMENT OF FACTS

Halpert & Co. is a corporation organized under the laws of the State of New Jersey which had a principal place of business at 284 Millburn Avenue, Millburn, New Jersey. Prior to filing for bankruptcy, Halpert & Co. was a registered broker-dealer of tax-free fixed income securities, including tax-free municipal bonds, and a member of the New York Stock Exchange. On March 14, 1997, Halpert & Co. ( or "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Alan Halpert is one of the founding principals of Halpert & Co. and has served as the President of the company since it was formed in 1973. Alan Halpert is the father of defendant Jeffrey Halpert, the father-in-law of defendant Matthew Cohen, and the husband of defendant Linda Halpert.

In the late 1980s, Halpert & Co. began encouraging clients to invest in the Bennett Funding Group ("Bennett") investments. See Halpert Memorandum of Law in Support of Motion to Dismiss, ("Def.'s Mem."), at 4. Bennett collapsed in March of 1996 following public charges against the Bennett family in relation to an alleged Ponzi scheme. See id. Many of the investors in Halpert & Co. who sustained substantial losses as a result of the Bennett collapse filed lawsuits and arbitrations against Halpert & Co. See id. The amount and costs of these legal actions against Halpert & Co., and the corresponding decline in the company's business, caused the company to file for Chapter 11 relief in March of 1997.

Debtor asserts that, for months prior to the filing, Defendant attempted to liquidate the assets of Halpert & Co. while the assets maintained a value, in order to maximize the money available to pay the creditors. See Def.'s Mem., at 5. Debtor further asserts that each of the steps taken to liquidate the assets pre-petition were disclosed through the Section 341 hearing of the Debtor and communications had with the Trustee and his counsel. See id. Defendant admits that, from December 1996 through February 1997, certain of the Debtor's assets were sold to JMFG. See id. at 6. These assets included certain furniture, fixtures, equipment, and customer lists of Halpert & Co. as disclosed in Rider 10 to the Debtor's Statement of Affairs. See id.[1] The Defendant asserts herein that the assets acquired by JMFG from Halpert & Co. were sold for their appraised value. Id.

The assets sold by the Debtor to JMFG were appraised by Deloitte & Touche LLP ("Deloitte") who had been retained by Halpert & Co. to prepare a valuation of the items sold. Defendant represents that Halpert & Co. offered its assets for sale to other parties, but negotiated the transaction with JMFG pursuant to a written Asset Purchase Agreement and upon the written consent of the Board of Directors. See id. In November of 1996, an undated letter was sent to all the clients of Halpert & Co., stating that in the absence of contrary instructions, all of Halpert & Co. client accounts would be transferred to JMFG as of December 6, 1996. The letter also stated that many "Registered Representatives" from Halpert & Co. would be working for JMFG. Complaint, Exh. C.

---

**1.** Rider 10 to the Debtor's Statement of Financial Affairs sets forth, among others, the following transfers:

| Date | Transferee | Item | Amount |
|---|---|---|---|
| 12/4/96 | Jeffrey Matthews Financial Group, L.L.C. | Furniture and fixtures | $ 5,250 |
| | | Computer equipment | 16,820 |
| | | Office machines | 570 |
| | | Customer lists | 27,100 |
| | | | $ 49,740 |
| 2/11/97 | Jeffrey Matthews Financial Group, L.L.C. | 24 desks and chairs 3 file cabinets | $ 3,425 |

The Trustee takes issue with how Deloitte was instructed by the principals of Halpert & Co. and JMFG to prepare its appraisal of Halpert & Co.'s assets. See Trustee's Proposed Second Amended Complaint ("Complaint") ¶¶ 13–31. Specifically, the Complaint states that:

On or about December 10, 1996, Matthew Cohen telephoned Mr. [Benjamin] Anderson [an accountant at Deloitte in its business valuation unit] and told him that the valuation of Halpert & Co. was "unbelievably inflated." Even though the business of Halpert & Co. had been transferred as an on-going concern to the Jeffrey Matthews Group, Matthew Cohen demanded that Mr. Anderson value the assets not according to fair market value in continued use, but according to an orderly liquidation value, telling Mr. Anderson that use of a fair market value in continued use standard "will kill me." Matthew Cohen also told Mr. Anderson that if the Jeffrey Matthews Group was valued as an on-going concern "there is a linkage." He told Mr. Anderson that he did not want a linkage, but a liquidation. A true and accurate copy of Mr. Anderson's notes of his discussion with Matthew Cohen, produced by Deloitte pursuant to the Trustee's Rule 2004 Subpoena, is annexed hereto as Exhibit "G."

Complaint at ¶ 22.

The Complaint alleges that after a December 10, 1996 telephone conversation with Defendant Alan Halpert, in which Defendant told Mr. Anderson that the valuation prepared was "way high," Mr. Anderson purportedly agreed to re-work the numbers by "chang[ing] the premise." *See id.* at ¶ 23 and Exhibit H of Complaint. In a December 12, 1996 facsimile to Matthew Cohen, Mr. Anderson provided both a "valuation according to an orderly liquidation value as well as a fair market value in continued use value." See Exhibit I of Complaint. As the Trustee points out, "[t]he orderly liquidation value was $50,-840, or about $140,000 less than the fair market value in continued use value previously provided" stated at $189,950. Compl. at ¶ 24, and Exh. I. The Trustee alleges that a day later, a similar correspondence was sent by Mr. Anderson to Alan Halpert. Compl. at ¶ 25, and Exh. J.

Thereafter, Mr. Anderson sent a facsimile to Matthew Cohen dated December 24, 1996, enclosing a draft of Deloitte's "conclusion letter" in which the value of the assets transferred as of October 31, 1996 is stated as $27,100 for the customer lists of the Debtor, and $50,800 for the equipment. *See id.* ¶¶ 26–27 and Exhibits K and L of Complaint. The draft refers to these figures as the "fair market value" of the assets. *See id.* The Trustee alleges that these communications were forwarded to Matthew Cohen at JMFG first, before being given to Defendant, "even though Halpert & Co. was supposed to be Deloitte's client." *Id.* at ¶ 25.

According to the Trustee, the final report on the Debtor's assets from Deloitte was issued on or about February 7, 1997, although dated December 24, 1996. *See id.* at ¶ 29. The report and accompanying opinion letter from Mr. Anderson state that the "fair market value of the Customer Lists, as of October 31, 1996, was $27,-100. The value of the Equipment, also as of October 31, 1996, was $50,800." Exhibit O of Complaint, p. 2.

The Trustee alleges that the transfers from Halpert & Co. to JMFG were made for less than reasonably equivalent consideration because the above named parties rejected the original fair market value appraisal of Deloitte in favor of the orderly liquidation value figures, even though these final figures were still characterized as indicating the fair market value for the Debtor's assets. See Complaint at ¶¶ 30–31. The Trustee further alleges that these actions were taken with the intent to hinder, delay, or defraud the creditors of Halpert & Co. *See id.* at ¶¶ 32–40. The Trust-

ee also alleges that, at the time the Debtor made these transfers, "the Debtor was engaged in business or transactions or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital, in violation of Section 548(a)(2)(A) and (B)(ii) of the Bankruptcy Code." *Id.* at ¶ 36.

Additionally, the Trustee challenges the transfer of Alan Halpert's personal interest in his home to his wife, Linda Halpert. The home is located in Florida. The transfer predated the bankruptcy filing by several years, on or about December 3, 1992. Defendant asserts that the transfer was done as part of his estate planning in order to create a "credit shelter trust." Def.'s Mem., at 7. The Trustee alleges that this transfer was done for inadequate consideration, with the actual intent to hinder, delay or defraud creditors. See Compl., at ¶ 54.

Counts One, Two, and Three of the Trustee's Second Amended Complaint seek and order (1) to avoid the transfers from Halpert & Co. to JMFG; (2) imposing a constructive trust in favor of Plaintiff on the business and assets of JMFG; (3) directing the defendants to account for and turn over to Plaintiff the business and assets of Halpert & Co. that were transferred to JMFG; (4) authorizing Plaintiff to take control of the business and assets of JMFG in his capacity as the trustee of the assets of Halpert & Co.; (5) awarding Plaintiff damages jointly and severally against all defendants in the amount of the value of the business and assets transferred, plus interest, punitive damages, and costs of this suit; (6) enjoining further disposition by the Debtor and the defendants of the assets of the Debtor; and (7) granting Plaintiff a pre-judgment attachment of the business and assets of Halpert & Co. that were transferred to JMFG.

In Counts One and Two, Plaintiff seeks this relief on several grounds: (1) that the transfer was made for less than reasonably equivalent value; (2) that the Debtor was insolvent at the time of the transfer, or became insolvent as a result of the transfer; (3) the Debtor was engaged in business or transactions, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital, in violation of Section 548(a)(2)(A) and (B)(ii) of the Bankruptcy Code and the New Jersey Fraudulent Transfer Act; (4) as principals and officers of the Debtor who participated in the alleged fraudulent transfers, defendants Alan Halpert, Jeffrey Halpert, and Matthew Cohen are individually liable to the Trustee for their participation in furtherance of these transfers.

Paragraphs 38 and 47 of the Trustee's proposed Second Amended Complaint seeks to add the language "in breach of their fiduciary duty to the Debtor" to the allegations asserted against the above named defendants. In Counts One and Two of Plaintiff's Second Amended Complaint, the Trustee seeks to add Deloitte as a defendant on the grounds that, as accountants for the Debtor, "Deloitte was obligated to provide professional services as may be reasonably expected from an accounting firm." *Id.* at ¶ 39. More specifically, the Trustee claims that "Deloitte negligently breached its obligation to the Debtor by providing an orderly liquidation value for the Debtor's assets when it was aware that the Debtor's business would be operated as an on-going concern." *See id.*

Count One of the Complaint rests on federal law (11 U.S.C. § 548), and Count Two of the Complaint rests on New Jersey's Fraudulent Transfer Act (N.J.S.A.25:2–25(a) and (b); N.J.S.A. 25:2–27, and N.J.S.A. 25:2–29).

Count Three alleges that defendants Alan Halpert, Jeffrey Halpert, Matthew Cohen, and JMFG willfully converted the business and assets of Halpert & Co.

Count Four of the Complaint seeks to set aside Alan Halpert's December 3, 1992, transfer of his interest in the Florida prop-

erty to his wife, Linda Halpert, on the grounds that the transfer was made for inadequate consideration, with the actual intent to hinder, delay, or defraud creditors within the meaning of the Florida Uniform Fraudulent Transfer Act or other applicable state law. Plaintiff seeks an order: (1) declaring Plaintiff's right to avoid Alan Halpert's transfer of his interest in the Florida property; (2) imposing a constructive trust against the Florida property; (3) authorizing prejudgment attachment of the property; (4) damages jointly and severally against both Alan and Linda Halpert; and (5) enjoining further disposition of Alan Halpert's assets by either Alan or Linda Halpert.

Defendant Alan Halpert filed the within motion to dismiss Plaintiff's causes of action as to him for failure to state a claim upon which relief may be granted on the grounds that he is merely the transferor in this dispute and did not actually receive or personally benefit from the property allegedly fraudulently transferred or allegedly converted and so may not be held liable by the Trustee for the challenged conveyances. Defendant also asserted that the Complaint, as originally plead, did not set forth a justifiable cause of action for damages against Halpert under 11 U.S.C. § 548 and the New Jersey Uniform Fraudulent Transfer Act. Defendant also claims that the Florida Property is protected under Florida's homestead exemption and that the action asserted against the property is time barred.

Defendant has also filed an Objection to the Trustee's Motion to Amend the First Amended Complaint, and in Further Support for his Motion to Dismiss on the grounds that amendment would be futile.

### DISCUSSION

#### A. Motion to Dismiss

■ Defendant Alan Halpert moves to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which is applicable to all bankruptcy proceedings pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure. Rule 12(b)(6) provides that a motion to dismiss a complaint may be filed for "failure to state a claim upon which relief can be granted." F.R.C.P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

■ In asserting a valid claim, a party need only plead "a short plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Additionally, the court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the complaint. *See Retail Clerks International Association v. Schermerhorn,* 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). The court must also resolve any ambiguities concerning the sufficiency of the claims in favor of the plaintiff. *See Hughes v. Rowe,* 499 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980)(per curiam).

■ In ruling on the within motion to dismiss, the Court may consider the contents of any documents attached to the complaint or incorporated by reference, matters that the court can take judicial notice of, and documents in the non-moving party's possession or which the non-moving party knew of or relied on in drafting its complaint. *See Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993). The court must also accept the allegations in the complaint as true in ruling on a motion to dismiss for failure to state a claim upon which relief may be granted. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972)(per curiam). Essentially, the "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King &*

*Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

Thus, in determining Defendant's within motion, the allegations in the Complaint must be accepted as true.

The first issue here, therefore, is whether the fraudulent conveyance provision of the Bankruptcy Code and New Jersey statutes authorize the Trustee to recover the property or the value of the property transferred from the Debtor to JMFG from Alan Halpert for his participation in the challenged transfer. Initially, however, the Court must first determine whether the Trustee's fraudulent transfer allegations are plead with sufficient particularity or if, as Defendant suggests, the Trustee's Second Amended Complaint is futile.

The Trustee seeks an entry of judgment against Defendants JMFG, Alan Halpert, Jeffrey Halpert, Matthew Cohen, and Deloitte under § 548 of the Bankruptcy Code to avoid the transfer of Halpert & Co.'s business and assets to JMFG as a fraudulent conveyance and an award of damages jointly and severally against all of these defendants. Although the Trustee did not expressly cite to § 550(a) of the Bankruptcy Code, at oral argument on February 4, 1999, counsel for the Trustee confirmed that the Trustee seeks the relief authorized by that section of the Code, namely an order directing the above named defendants "to account for and turn over to the Plaintiff the business and assets of Halpert & Co. that were transferred to the Jeffrey Matthews Group." Trustee's Second Amended Complaint, at ¶ 40. On February 10, 1999, an amended form of the Trustee's Second Amended Complaint was filed with the Court. In Counts One and Two, the fraudulent conveyance counts, the Trustee now expressly moves pursuant to § 550 of the Bankruptcy Code.

Defendant Alan Halpert moves for dismissal of the Complaint as it relates to him on the grounds that he was only the transferor of the business and assets of Halpert & Co. and thus may not be properly held individually liable under Section 550(a).

Defendant also asserts that the Trustee's allegations in the Second Amended Complaint do little else other than provide a detailed account of Deloitte's role allegedly in the transfer of assets from the Debtor to JMFG in adding Deloitte to the Action. Defendant argues that this renders amendment of the Complaint futile because it does not address Alan Halpert's liability for the alleged fraudulent transfer. *See* Def's Obj. to Trustee's Motion to Amend First Amended Compl. at ¶ 11 (*citing Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *Averbach v. Rival Mfg. Co.,* 879 F.2d 1196, 1203 (3d Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 726, 107 L.Ed.2d 745 (1990).

Code § 548 provides, in pertinent part, that a trustee may avoid a transfer of an interest in a debtor's property where the debtor voluntarily or involuntarily:

> (2)(A) received less than reasonably equivalent value in exchange for such transfer or obligation; and
>
>> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>>
>> (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
>>
>> (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a). Thus, to avoid a transfer under § 548(a)(2) the Trustee must establish that: (1) the Debtor had an interest in the property; (2) the interest was transferred within one year of the filing of the bankruptcy petition; (3) the Debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) the Debtor received less

than a reasonably equivalent value in exchange for such transfer. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535, 114 S.Ct. 1757, 1760, 128 L.Ed.2d 556, reh'g denied, 512 U.S. 1247, 114 S.Ct. 2771, 129 L.Ed.2d 884 (1994). The Trustee may recover fraudulently transferred property or the value of such property under section 550 of the Bankruptcy Code from the entity for whose benefit the transfer was made or any "immediate" or "mediate" transferee of the initial transferee. 11 U.S.C. § 550.

█ Here, the property includes furniture, fixtures and equipment, preliminarily valued by Deloitte at $189,950. See December 9, 1996 Letter to Alan Halpert from Ben Anderson annexed to Compl. as Exhibit F. The Trustee alleges herein that Deloitte's estimate of the value of the Debtor's property was adjusted downward according to instructions from Alan Halpert and Matthew Cohen. See Complaint at ¶ 21–24, Exhibits H, I, and M of Complaint. According to the Trustee, Deloitte's final report states that the property transferred from Halpert & Co. to JMFG had a fair market value as of October 31, 1996 of $77,900, which breaks down to $27,100 for the Halpert & Co.'s customer lists and $50,800 for the equipment originally valued by Deloitte at $189,950. See Exhibits F, K, L, and O of Complaint. One of the issues is whether the business and assets of Halpert and Co. were transferred to JMFG for the "reasonably equivalent value". Since resolving this issue would require a "fact-intensive" inquiry, it would be improper for the Court to decide it on a motion to dismiss. *See Besing v. Hawthorne*, 981 F.2d 1488, 1494, 1495, note 12 (5th Cir.), cert. denied, 510 U.S. 821, 114 S.Ct. 79, 126 L.Ed.2d 47 (1993) (citing various cases that address the issue of whether reasonable equivalency is a question of fact or law, and noting that only the Seventh Circuit in *In re Bundles*, 856 F.2d 815, 821 (7th Cir.1988) "appears" to treat reasonable equivalency as if it were a question of law that the court may make an independent assessment of without an evidentiary hearing); *see also* S.Rep. No. 989, 95th Cong., 2d Sess. 54, U.S.Code Cong. & Admin. News pp. 5787, 5840 (1978)("Courts will have to determine value on a case by case basis, taking into account the facts of each case and the competing interests in the case"); 5 Collier on Bankruptcy ¶ 548.05[1][b] (15th ed. 1998)("Whether the transfer is for 'reasonably equivalent value' in every case is largely a question of fact, as to which considerable latitude must be allowed to the trier of facts") (citations omitted).

█ Leave to amend a complaint should be granted absent circumstances such as undue delay, bad faith, dilatory motive, undue prejudice to the adverse party, or where amendment would be an exercise in futility. *See Foman*, 371 U.S. at 182, 83 S.Ct. 227. Additionally, leave to amend may be denied if the amendment adds a cause of action or otherwise alters the complaint in such a way that the defendants would have to pursue an entirely new and different defense at the eleventh hour. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990). None of the above reasons for refusing to allow amendment of a complaint are present in this case.

█ The Court finds that the Trustee's Second Amended Complaint more than sufficiently expands upon the alleged liability of Alan Halpert. The Trustee's Second Amended Complaint precisely details the transfers alleged to be fraudulent, the reasons those transfers are alleged to be fraudulent, and the roles of the defendants in the transfers. The Trustee's Second Amended Complaint pleads the circumstances surrounding the elements of his cause of action under § 548(a), including the Trustee's claims against Defendant, with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b), made applicable to adversarial bankruptcy pro-

ceedings pursuant to Federal Rule of Bankruptcy Procedure 7009.[2]

■ The Court does not find that the Trustee has acted in bad faith, or is seeking to amend for dilatory reasons. Additionally, permitting the Trustee to amend will not unduly prejudice the defendants. Although the Trustee adds Deloitte as a party to the adversary proceeding and adds breach of fiduciary duty as a claim against the defendants, the defendants will not have to engage in substantial additional discovery or drastically revise their defense strategies at the last minute to respond to the Trustee's Second Amended Complaint. Accordingly, the Court grants Plaintiff's Motion to Amend the Trustee's First Amended Complaint.

**B. Whether the Trustee May Recover Against Alan Halpert Under §§ 548 and 550 of the Bankruptcy Code as a Beneficiary of the Challenged Transfers to JMFG**

■ The Trustee is entitled to recover "for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property," involved in a transfer which has been avoided under § 548 from the entity for whose benefit the avoided transfer was made. *See* 11 U.S.C. § 550(a)(1). Both the transferor and the transferee should be named as necessary parties to a fraudulent transfer suit. *See* 5 *Collier on Bankruptcy,* ¶ 548.07[1] at 548–54 note 1 (15th ed. revised 1998)(*citing In re Farmer's Market,* 22 B.R. 71 (9th Cir. BAP 1982); Fed. R. Bankr.P. 7019).

■ Section 550(a) provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b) or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a). Thus, a party must receive either property or a benefit from the transfer to be held liable under Section 550. *See* 11 U.S.C. § 550(a)(1); *see also Danning v. Miller (In re Bullion Reserve of North America),* 922 F.2d 544, 547–49 (9th Cir.1991)(construing 11 U.S.C. § 550(a)); *Pereira v. Checkmate Communications Co., Inc.,* 9 B.R. 585, 620 (Bankr. E.D.N.Y.1981) (distinguishing between the former Bankruptcy Act's 11 U.S.C. § 110(e)(2) and the Bankruptcy Code's 11 U.S.C. § 550(a)). A transferor usually does not receive any property or benefit from either the debtor or the debtor's transferee, immediate or mediate. *See* 5 *Collier on Bankruptcy,* ¶ 548.07[1] at 548–55 (15th ed. revised 1998)(*citing Mack v. Newton,* 737 F.2d 1343, 1351 (5th Cir. 1984))(Act case)("one who did not actually receive any of the property fraudulently transferred will not be liable for its value, even though he may have participated or conspired in the making of a fraudulent transfer (or preference)").

In his motion to dismiss the fraudulent transfer claims as they relate to him, Defendant relies on cases decided under Section 70e of the former Bankruptcy Act, 11 U.S.C. § 110(e), which was similar to the current Bankruptcy Code 11 U.S.C. § 550(a). These cases commonly held that "the transferor is not the proper party to be held liable where a trustee is exercising

---

**2.** Federal Rule of Bankruptcy Procedure 7009 states, in pertinent part that:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Bankr.P. 7009(b). The Court finds that the Trustee's allegations that Defendant defrauded creditors of Halpert & Co. through his participation in the transfer to JMFG at liquidation rather than market values in breach of his fiduciary duties is sufficiently particular to meet the above requirements.

his avoiding powers." *Pereira v. Kaiser (In re Big Apple Scenic Studio, Inc.)*, 63 B.R. 85, 88 (Bankr.S.D.N.Y.1986)(citing with approval numerous cases decided under the former Bankruptcy Act holding that the transferor is normally not liable in an avoidance action) (citations omitted).

The Trustee argues that, "notwithstanding Mr. Halpert's assurances that he is neither 'an initial, immediate or mediate transferee' nor a 'beneficiary thereof,' " the Court is obliged to accept as true the Trustee's assertions that Defendant participated in the scheme to fraudulently transfer assets from the Debtor to JMFG and that Defendant is a beneficiary of this transfer. Trustee's Brief, at 15. The Trustee asserts that Defendant's counsel confuse proof requirements with pleading requirements in their brief. See Trustee's Brief, at 16, note 1 (*citing Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 790 (3d Cir.1984), *cert. denied* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985))(recognizing, in a RICO case, the proof standard established by case law "is simply inapplicable to test the sufficiency of pleadings").

In ruling on the within motion to dismiss, the issue before the Court "is not whether [the Trustee] will ultimately prevail but whether the [Trustee] is entitled to offer evidence to support [his] claims." *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Therefore, the Court need only determine whether the Trustee asserts "a short plain statement of the claim showing that the [Trustee] is entitled to relief." Fed. R.Civ.P. 8(a).

The Trustee's Second Amended Complaint asserts that defendants Alan Halpert, Jeffrey Halpert, and Matthew Cohen "are individually liable to the Trustee for their individual participation in furtherance of the fraudulent transfers, in breach of their fiduciary duty to the Debtor." Trustee's Second Amended Compl., at ¶ 38, 47. The Second Amended Complaint specifies correspondence and conversations alleged to constitute a scheme to defraud the creditors of Halpert & Co., by making alleged fraudulent transfers to JMFG. *Id.* at ¶¶ 13–31. The Trustee also seeks damages "jointly and severally against all defendants in the amount of the value of the business and assets transferred." *Id.* at ¶ 40.

Defendants may thus be held liable for their alleged breach of fiduciary duty to the Debtor if the Trustee offers sufficient evidence in support of these claims at trial. Additionally, the Bankruptcy Code specifically authorizes the relief which the Trustee requests, namely to recover fraudulently transferred property from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." See 11 U.S.C. § 550(a)(1) and (2). Whether Defendant received any property in the challenged transfer from the Debtor to JMFG or received a benefit from the transfer, "whether 'incidental' or 'intended,' are questions of fact which are not properly resolved (on a motion to dismiss)." *Buckhead America Corp. v. Reliance Capital Group, Inc.*, 178 B.R. 956, 962, note 8 (D.Del.1994);[3] *see also Gib-*

---

3. District Judge Sue L. Robinson also noted in *Buckhead* that where "novel legal theories of recovery" are asserted, such theories "are best tested for legal sufficiency in light of actual, rather than alleged facts." 178 B.R. at 961 (citation omitted). In light of the apparent division between courts as to whether a trustee may recover property or the value of property that is alleged to be fraudulently transferred from the initial transferor, *see In re Big Apple Scenic Studio*, 63 B.R. 85, 88

(Bankr.S.D.N.Y.1986)(holding that transferor is not proper party to recover from in avoidance action); *In re Carousel Candy Co.*, 38 B.R. 927, 938 (Bankr.E.D.N.Y.1984)(insider who made certain pre-petition fraudulent transfers acting as an attorney for the debtor was held liable to the trustee under § 550 as an "initial transferor" for the full amount realized in sale of debtor's assets), this Court finds that the Trustee's theory of recovery

bons v. First Fidelity (In the Matter of Princeton–New York Investors, Inc.), 199 B.R. 285, 291–92 (Bankr.D.N.J.1996), aff'd 219 B.R. 55 (D.N.J.1998) (in which this Court denied a defendants' motion to dismiss the complaint as to them as required under N.J.S.A. 25:2–30 on the grounds that he "did not benefit from the transfer").[4]

Defendant asserts that the Complaint should be dismissed as to him since neither the Trustee's First or Second Amended Complaints specifically state or allege that he was an initial, immediate or mediate (or subsequent) transferee of the property transferred to JFMG, or even a beneficiary thereof. In this Circuit, however, a complaint is sufficiently well plead if the allegations are such that they "place the defendants on notice of the precise misconduct with which they are charged." Seville Indus., 742 F.2d at 791.

The Trustee argues that Defendant is indeed a beneficiary of the transfer to JMFG and that "the facts will bear out the truth of [these] allegations." Trustee's Brief, at 15. The Court finds that the Trustee has met its burden of "placing defendants on notice of the precise misconduct with which they are charged." See Seville Indus., 742 F.2d at 791. Specifically, that the alleged downward adjustment of the Deloitte valuations constituted the vehicle by which Defendant and the JMFG defendants were able to effectuate the alleged fraudulent transfer.

The Trustee will have to prove that assets transferred to JMFG were not for their reasonably equivalent value, and that Defendant received some benefit from this transfer at trial, but need not do so at this stage of the litigation. However, at this stage of the litigation the Court finds that the Trustee states a cause of action and a theory of recovery authorized by both the Bankruptcy Code and N.J.S.A. 25: 2–27, 2–29 and 2–30.[5]

In addition, certain cases which Defendant relies on for the proposition that neither the Bankruptcy Code nor New Jersey Fraudulent Transfer Act permit the Trustee to bring a fraudulent conveyance action against Alan Halpert were decided under the former Bankruptcy Act. See Def.'s Brief at 11–13 and cases cited therein. As Bankruptcy Judge Leslie Tchaikovsky stated in Haley v. Sorani, 118 B.R. 753 (Bankr.N.D.Cal.1990), "[w]hile former case law may be looked to for guidance, it would be nonsensical to conclude that existing case law has exhausted every possible type of entity from whom recovery may be obtained under 11 U.S.C. § 550(a)(1)." Id. at 758. Indeed, since the Bankruptcy Code authorizes the trustee to recover from both the transferee and the beneficiary of a transfer in an avoidance action, cases decided under the former Bankruptcy Act have lost some of their authoritative as well as instructive value. See Pereira v. Checkmate Communications Co., Inc. (In re Checkmate Stereo and Electronics, Ltd.), 9 B.R. 585, 620

would be "best tested for legal sufficiency in light of actual, rather than alleged facts."

4. In Gibbons, a mortgagor (First Fidelity) allegedly used the proceeds from the sale of property owned by the debtor to pay off certain obligations owed to it by a defendant shareholder who was also alleged to be the chief executive officer of the debtor company. See Gibbons, 199 B.R. at 289. This Court found that the trustee in Gibbons had alleged sufficient facts to show that the defendant "arguably benefitted from the application of the sale proceeds to reduce loans from First Fidelity to other entities" owned by the defendant or to which the defendant was a substan-

tial shareholder. Id. at 292 (citing Black's Law Dictionary 158) (6th ed. 1990)("A benefit is an advantage, profit, privilege, gain, or some legal right to which an entity would not otherwise have been entitled").

5. N.J.S.A. 25:2–30 specifically states that a creditor:

may recover judgment for the value of the asset transferred ... or the amount necessary to satisfy the creditor's claim whichever is less. The judgment may be entered against: (1) The first transferee of the asset or the person for whose benefit the transfer was made.

N.J.S.A. 25:2–30(b)(1).

(Bankr.E.D.N.Y.1981), aff'd, 21 B.R. 402 (E.D.N.Y.1982) (construing 11 U.S.C. § 550)("In view of the change in the statutory language, [former] decisions—based on the more limited language of the Bankruptcy Act, have lost their former authority") (citation omitted).

In *Haley*, Bankruptcy Judge Leslie Tchaikovsky noted that, even under the former Bankruptcy Act, there was an exception to the general rule permitting recovery only from a transferee. 118 B.R. at 757. According to Judge Tchaikovsky, under some circumstances courts would allow the trustee to recover from a third party where the third party conspired with the debtor in making the avoidable transfer, "even if the trustee could not prove that the third party had actually received the property transferred or its proceeds." *Id.* (*citing National Bank v. National Herkimer County Bank*, 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042 (1912); *Irving Trust Co. v. Siroty*, 60 F.2d 71, 72–73 (2d Cir. 1932)). After examining the legislative history of the Bankruptcy Code, Judge Tchaikovsky concluded that "recovery of an avoided transfer may be ordered under 11 U.S.C. § 550(a)(1) even though the entity did not actually receive a benefit as a result of the transfer." *Id.* at 759.[6]

At least one bankruptcy court has held a defendant liable under § 550(a) "as an initial transferor" in a fraudulent transaction. *In re Carousel Candy Co.*, 38 B.R. 927, 938 (Bankr.E.D.N.Y.1984). The defendant in *Carousel Candy* was found to be an "insider" who made certain pre-petition fraudulent transfers acting as an attorney for the debtor and as an agent of the sole shareholder. *See id.* at 938 (citation omitted).

The *Carousel Candy* court stated that the attorney had a "fiduciary obligation to the debtor to protect its assets against raids by or on behalf of its insiders, and to preserve the corporate integrity for the benefit of its creditors." *Id.* at 938 (citation omitted).

Accordingly, the court in that case found the attorney liable to the trustee for the entire amount realized in the sale of the debtor's assets, including the attorney's fees paid to him. *See id.* The *Carousel Candy* court explained its decision stating, "[a]n action for fraudulent transfer lies against the transferor, and initial, immediate or mediate transferees, or the beneficiaries of such transfers—all persons in whose hands the assets of the debtor come to res." [sic] *Id.* (*citing* 11 U.S.C. § 550; *In re Checkmate*, 9 B.R. at 620).

Defendant cites *United States v. Mazzara*, 530 F.Supp. 1380, 1383–84 (D.N.J. 1982), aff'd, 722 F.2d 733 (3d Cir.1983), for the proposition that the Trustee may not recover the alleged fraudulently conveyed property or its value from Alan Halpert. See Def.'s Mem., at 12–13. Defendant asserts that the *Mazzara* court "interpreting predecessor Fraudulent Conveyance Act statute in New Jersey—[found] that a conduit agent could not be held liable as a fraudulent transferee." *Id.*

In *Mazzara*, a chronically delinquent taxpayer turned over the family finances to his wife who used the monies transferred to her to partially pay off her husband's debts to the IRS. *See Mazzara*, 530 F.Supp. at 1380–84. The IRS sought to hold Mrs. Mazzara liable for the monies transferred to her to pay off her husband's

**6.** *Haley* involved a creditor who owned all of the outstanding stock in the debtor corporation. 118 B.R. at 755. The creditor in *Haley* agreed to sell the stock to a buyer in exchange for four million dollars, two million of which was to be paid in cash and the other two million in the form of a promissory note. *Id.* The parties later modified the sale agreement to provide that the creditor would receive a $1,550,000 letter of credit. The letter of credit was secured by a certificate of deposit that the buyer had obtained from the proceeds of a $1,500,000 loan secured by a lien on all of the debtor's tangible assets. *Id.* When the buyer defaulted on the note, the creditor made a demand for payment on the letter of credit and received the $1,550,000. The bank that issued the CD then exercised its rights as the security holder. *Id.* The debtor was left insolvent and without any assets that could be sold to pay off creditors as a result.

debts. *See id.* The *Mazzara* court held that:

> If Dr. Mazzara had made these payments himself, certainly Mrs. Mazzara could not be held liable even if she benefitted therefrom. Because the transfers were first made to an agent, however, and then to the creditor, plaintiff attempts to hold the agent liable as a fraudulent transferee. Such a result could not have been contemplated by the legislature in enacting the statute. The statute was enacted to prevent insolvent debtors from placing their property beyond the reach of their creditors while at the same time enjoying the benefits thereof. *Townsend v. McGrain,* 43 N.J.Super. 438, 441, 128 A.2d 875 (Ch. Div.1957). Here, Dr. Mazzara's wife used much of the transferred money to pay the doctor's creditors. Where payments to bona fide creditors were made, no enjoyment over the property was retained by Dr. Mazzara. This Court therefore holds that where a principal conveys money to an agent and that money is used by the agent to satisfy debts of the principal, a conveyance, within the meaning of N.J. Stat. Ann. § 25:2–10, has not taken place between the principal and the agent.

*Id.* at 1384.

Here, there is no showing that either Defendant, the Debtor or any of the other defendants transferred property to JMFG for the purpose of paying off Halpert & Co.'s debts. Whether this transfer was done to defraud creditors, as the Trustee asserts, or to maximize the money available to pay creditors, as Defendant asserts, is a question of fact that cannot be decided on a motion to dismiss. *Mazzara* is thus inapplicable to the present case and to Defendant's motion to dismiss.

## C. Whether the Trustee States a Cause of Action under New Jersey's Fraudulent Transfer Act. N.J.S.A. 25: 2–27, 2–29 and 2–30

Defendant asserts that N.J.S.A. 25:2–27, 2–29 and 2–30 are inapplicable because

"[t]he remedies afforded by the UFTA 'relate entirely to the debtor's fraudulently transferred property and entails no personal liability on the part of those responsible for the transfer.'" Def.'s Brief, at 12, *quoting Pender v. Texas Napco, Inc., (Matter of LaJet Inc.),* 150 B.R. 648, 653 (Bankr.E.D.La.1993), *aff'd in part, rev'd in part; In re LaJet, Inc.,* 1994 WL 392893 (E.D.La. June 2, 1994), *amended on rehearing, In re Lajet, Inc.,* 1994 WL 421339 (E.D.La. Aug. 4, 1994), *amended on reconsideration,* 1994 WL 577357 (E.D.La. Oct. 13, 1994)(*quoting In re Mortgageamerica Corp.,* 714 F.2d 1266, 1272 (5th Cir.1983)).

■ The Trustee asserts that "[r]ather than rely on questionable authority with significant negative history, [Defendant's] analysis should be guided by the remedies provision of the New Jersey Fraudulent Transfer Act." Trustee's Brief, at 17–18. Under the New Jersey Fraudulent Transfer Act, the Court may award "any other relief the circumstances may require." N.J.S.A. 25:2–29(3)(c). The Trustee argues that "other relief" includes damages, if "that proves appropriate under the circumstances." Whether circumstances exist in this case such that an award of damages would be appropriate against any of the defendants, including Alan Halpert, is a question of fact to be determined at trial or, at least, after the discovery process is complete.

■ Defendant's reliance on *Pender* for the proposition that the Trustee does not state a cause of action against Alan Halpert under the New Jersey Fraudulent Transfer Act is misplaced. *See* Def.'s Brief, at 12–13 *citing Pender,* 150 B.R. at 653. First, *Pender* was decided after discovery on a motion for summary judgment. 150 B.R. at 653. Second, in deciding the defendant's motion for summary judgment in *Pender,* the court determined that "even [Plaintiff's] factual recitation does not state that [Defendant] received any of the funds." 150 B.R. at 653.

Third, the factual allegations and theories of recovery in *Pender* are different from those asserted by the Trustee in this case.

The Plaintiffs in *Pender* alleged that the lawyer, while acting as a director for the debtor, voted for a dividend, or assented to a distribution of assets in favor of the debtor's parent corporation and sole stockholder which left the debtor insolvent. *See id.* at 651. The *Pender* court found that payments made to the defendant lawyer by his law firm for legal services involving the purchase of the debtor, (LaJet), by its parent corporation, (Flare), were not an "indirect benefit under the TFTA (Texas Fraudulent Transfer Act) which may be voided by this Court." *Id.* at 653–54.

Here, it is not the monies paid to defendants Alan Halpert, Jeffrey Halpert, or Matthew Cohen for their services as directors or principals of Halpert & Co. that the Trustee challenges, but rather the transfers themselves from the Debtor to JMFG which the Trustee alleges Defendant benefitted from. See Trustee's Brief, at 13–18.

The Trustee's Second Amended Complaint details the precise alleged misconduct which, if proven, could render defendants Alan Halpert, Jeffrey Halpert, Matthew Cohen, and JMFG liable as beneficiaries and initial transferees of the alleged fraudulently transferred property. Accordingly, this Court finds that the Trustee's Second Amended Complaint is sufficiently plead to state a theory of recovery under 11 U.S.C. § 550 and N.J.S.A. 25:2–27, 2–29 and 2–30. Therefore, Defendant's Motion to Dismiss Counts One and Two of the Trustee's Complaint as they relate to him must be denied.

## D. Conversion

■ Count Three of the Trustee's Complaint alleges that defendants Alan Halpert, Jeffrey Halpert, Matthew Cohen, and the Jeffrey Matthews Group, through their actions described earlier in this opinion and in the Trustee's Complaint, willful-ly converted the business and assets of Halpert & Co. See Trustee's Compl. at ¶ 50–51. In order to succeed on a claim for conversion, under New Jersey law, "a plaintiff must establish that [he or she] was 'deprived of—property by the act of another assuming an unauthorized dominion and control over it.'" *Erit v. Judge, Inc.,* 961 F.Supp. 774, 781 (D.N.J.1997)(*quoting Charles Bloom & Co. v. Echo Jewelers,* 279 N.J.Super. 372, 381, 652 A.2d 1238 (App.Div.1995)).

■ Defendant argues that since the Trustee "cannot prove that the Debtor's assets were converted for the use of an individual defendant, like Alan Halpert, he may not recover against such a defendant." Def.'s Brief, at 15 (*citing Bracaglia v. Manzo (In re United Stairs Corp.),* 176 B.R. 359, 371 (Bankr.D.N.J.1995)). In support of this argument, Defendant asserts that:

[t]he property purchased by Jeffrey Matthews Financial Group was sold (1) for fair market value as established by the appraisal conducted and opined on by Deloitte Touche, (2) consistent with the terms of a negotiated Asset Purchase Agreement, (3) pursuant to the approval of the Company's Board of Directors and (4) after attempts were made to sell the property to other third parties.

Def.'s Brief, at 14. Taking the facts as stated in the Trustee's Complaint as true, the Trustee asserts that Halpert & Co.'s assets were not sold for fair market value, but rather for their liquidation value at Defendant's and Matthew Cohen's instructions. See Trustee's Brief, supra.

Moreover, the Trustee asserts that defendants Alan Halpert, Jeffrey Halpert, Matthew Cohen, and JMFG exercised "unauthorized dominion and control" through a "sham" negotiation process "culminating in the conversion of valuable assets for grossly inadequate consideration." *Id.* at 19. Whether, as the Trustee alleges, Deloitte's method of appraising the Debtor's

assets at their liquidation value instead of their fair market value renders the transfer to JMFG fraudulent as a transfer for less than reasonably equivalent value is a question of fact that may not be decided on a motion to dismiss. The Court cannot rule on this issue without considering whether the transfer of property to JMFG as alleged at the liquidation value rather than the market value was done in good faith or with the intent to hinder, delay, or defraud creditors. All of which are questions of fact under N.J.S.A. § 25:2–26.[7]

Additionally, certain cases which Defendant relies upon to dismiss Count Three of the Trustee's Complaint were decided after the discovery stage of litigation and, in some cases, after a trial. *See Erit*, 961 F.Supp. 774 (D.N.J.1997)(In deciding motion for summary judgment, the district court found that since Plaintiff did not allege that Defendant "converted" Plaintiff's property rights in [Plaintiff's] professional certification after Plaintiff was no longer employed with Defendant rendered Plaintiff's conversion claim without merit); *Bracaglia*, 176 B.R. at 371 (Bankr.D.N.J. 1995) (In deciding Plaintiff's conversion claim, the bankruptcy court found that "Plaintiffs did not prove [at trial], however, that the debtor's assets were converted for the use of the individual defendants"). Furthermore, the Trustee alleges that Defendant authorized the transfer of assets from the Debtor to JMFG in bad faith, for personal reasons, and "continues to exert

control over the transferred assets." Trustee's Brief, at 20–21. Accordingly, and for those reasons stated above, the Court denies Defendant's Motion to Dismiss Count Three of the Complaint as to said Defendant.

**E. Whether Plaintiff's Claim to Recover Property Transferred to Linda Halpert is Time Barred or Protected by Florida's Homestead Exemption.**

 Section 544(b) grants the Trustee the same rights as any unsecured creditor to avoid transfers under applicable state law. See 11 U.S.C. § 544(b); *see also Butler v. NationsBank, N.A.*, 58 F.3d 1022, 1026 (4th Cir.1995)(applying North Carolina fraudulent conveyances statute). While federal law controls which claims are actionable under the Bankruptcy Code, the issue of "when a right to payment arises, absent overriding federal law, 'is to be determined by reference to state law.'" *Matter of M. Frenville Co., Inc.*, 744 F.2d 332, 337 (3d Cir.1984), *cert. denied* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985)(*quoting Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 (1946)). Under both New Jersey and Florida law, a cause of action with respect to a fraudulent transfer must be brought within four years after the challenged transfer was made or, "if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant."

---

7. N.J.S.A. § 25:2–26 provides that a court should consider the following factors when determining whether actual intent to defraud exists:

 a. The transferor obligation was to an insider;

 b. The debtor retained possession or control of the property transferred after the transfer;

 c. The transfer or obligation was disclosed or concealed;

 d. Before the transfer was made or obligation incurred, the debtor had been sued or threatened with suit;

 e. The transfer was of substantially all the debtor's assets

 f. The debtor absconded;

 g. The debtor removed or concealed assets;

 h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

 i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

 j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and

 k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.J.S.A. 25:2–31(a); Fla. Stat. Ann. § 726.110.

The Trustee asserts that "under the statutory definitions, it is the existence of a claim—a right to payment—by which a person becomes a creditor, and a person must be a creditor before he may commence an action under N.J.S.A. 25:2–31(a) or Fla. Stat. Ann. § 726.110." Trustee's Brief, at 24. The Trustee argues that since:

> a person who does not have a claim would have no reason to discover a fraudulent transfer accomplished by a party against whom he has no claim, [i]t is the existence of the claim [which]—triggers a creditors obligation to reasonably discover assets, including fraudulently transferred assets, against which recover may be had.

Trustee's Brief, at 24. Therefore, according to the Trustee, the time limit on when he could bring a cause of action to avoid the transfer of Alan Halpert's interest in the Florida property only began to run upon the Trustee's appointment on April 10, 1997. See Trustee's Brief, at 24–25. The Trustee filed this Complaint on Monday, April 13, 1998,[8] which would be timely if the Court accepts the Trustee's theory on when the time limits began to run.[9] Defendant asserts that since section 544 confers no greater rights to the Trustee than a creditor would have if such a creditor were bringing a similar avoidance action, the Trustee is barred from recovering against Alan Halpert because the statute of limitations has run prior to commencement of this case. See Def's Brief, at 16 (citations omitted). At the February 4, 1999 hearing, Defendant did not pursue this objection. Nonetheless, for fullness of the record, the Court addresses the issue herein.

In a previous case, this Court found that N.J.S.A. 25:2–31(a) is a statute of repose "because it embodies the most distinctive characteristic of a statute of repose, the barring of the right to bring an action rather than the remedy prescribed". *Gibbons v. First Fidelity Bank, N.A. (Matter of Princeton—New York Investors, Inc.)*, 199 B.R. 285, 294, note 4 (Bankr.D.N.J. 1996), *aff'd*, 219 B.R. 55 (D.N.J.1998)(noting that the "New Jersey Senate Labor, Industry and Profession's Committee Statement Report which accompanied the enactment of the New Jersey Fraudulent Transfer Act stated in pertinent part: The bill also provides a statute of limitation that bars the right rather than the remedy on expiration of the statutory periods prescribed. Assembly No. 1265–L.1988 c. 74."). Initially, the Court notes that since both New Jersey and Florida have adopted the same relevant language for the Uniform Fraudulent Transfer Act ("UFTA"), see N.J.S.A. § 25:2–31 and Fla. Stat. Ann. § 726.110, and no conflict appears in the relevant case law, no choice of law analysis is required. *See Lucker*

---

8. The federal courts were closed on April 10, 1998 in observance of Good Friday.

9. The Trustee asserts that since both N.J.S.A. 25:2–31(a) and Fla. Stat. Ann. § 726.110 permit a creditor to bring an action " 'within one year after the transfer or the obligation was or could have been reasonably discovered by the claimant,' " he is entitled to pursue an avoidance action against Defendant. Trustee's Brief, at 23–25 (*citing* N.J.S.A. 25:2–31(a) and Fla. Stat. Ann. § 726.110; *Intili v. DiGiorgio*, 300 N.J.Super. 652, 660, 693 A.2d 573 (Ch.Div.1997))(additional one year time period "expressly contemplate[s] situations in which a creditor has a cause of action four years after a fraudulent transfer occurred"). In *Intili*, the court held that since the plaintiff had retained creditor status on a note at the time of the fraudulent transfer and had record notice of the transfer, "the Legislature's purpose would be frustrated if N.J.S.A. 25:2–31's time limitations were relaxed." 300 N.J.Super. at 661, 693 A.2d 573. Accordingly, the *Intili* court granted the defendant's motion to dismiss. Here, however, the Trustee did not have creditor status in relation to Halpert & Co. at the time of the alleged fraudulent transfer and was not on record notice of the transfer. Under either the Trustee's theory or the Court's analysis of §§ 544 and 546 which is explained more fully in the body of this opinion, the Trustee's action against Defendant is not time barred.

*Manufacturing, Unit of Amclyde Engineered Prods., Inc. v. Home Ins. Co.*, 23 F.3d 808 (3d Cir.1994). Since no choice of law analysis is required, the Court will treat the Florida statute (Fla.Stat.Ann. § 726.110) as a statute of repose as well.

Defendant argued that *Gibbons* supports his position in his motion to dismiss because:

> "the limitations period ran several months before the Debtor's bankruptcy case itself had begun and, therefore, there existed no claim for the Trustee to assert … [therefore] the Trustee's Fourth Count must be dismissed not only as to Alan Halpert, but also his wife, Linda Halpert."

Def.'s Brief, at 17–18.

In *Gibbons,* this Court held that:

> the statute of repose at issue [N.J.S.A. 25:2–31] in the present case presents an obstacle to the objectives of Congress in enacting the Bankruptcy Code. The two-year period provided to trustees under § 546 is designed to give "the trustees some breathing room to determine what claims to assert under § 544." *See [In re] Dry Wall Supply,* 111 B.R. [933], at 936 [(D.Colo.1990)]. Section 108(a) also grants the trustee time to evaluate claims held by the estate and to sort out the affairs of the estate in an orderly fashion. See H.Rep. No. 595, 95th Cong., 1st Sess. 318 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6275. This reprieve from the statute of limitations clock is especially important where the management of a business, in the period immediately prior to bankruptcy, may not have adequate incentives to bring lawsuits in a timely fashion where the recovery is remote in either time or certainty or the prospective benefits would accrue to creditors rather than shareholders. Section 108(a) allows the trustee to counteract the possibility that management was not adequately serving the creditor's interests in the period before filing …

The statute at issue herein, N.J.S.A. § 25:2–31, under the specific facts of this case collides with federal bankruptcy law, including § 546 of the Bankruptcy Code, and, pursuant to the Supremacy Clause, the state law must yield. This Court holds, therefore, that under the facts of this case N.J.S.A. § 25:2–31 is preempted by federal bankruptcy law. Accordingly the avoidance action commenced by the Trustee on October 6, 1995 was timely, as it was commenced within the two-year statutory period of § 546 of the Bankruptcy Code. Accordingly, [Defendant's] motion to dismiss the balance of the Complaint (the § 544 claims) is hereby DENIED.

*Id.* at 297–98. The "specific facts" of *Gibbons* were that the individual defendants who had incorporated the debtor (Princeton–New York Investors, Inc. ("PNY")), caused PNY to acquire a "parcel of land together with a former Playboy hotel and other buildings situated thereon in Vernon Valley, New Jersey." *Id.* at 288. PNY was alleged to have partially financed this acquisition with a $6,000,000 first mortgage loan from First Fidelity, "which was allegedly personally guaranteed" by the individual defendants who incorporated PNY. *Id.*

In 1990, PNY executed a contract with Shinnihon USA Co., Ltd. ("Shinnihon") for the purchase and sale of a golf course located on PNY's premises and adjacent land for $20,000,000 … According to the closing documents, $4,000,000 of the proceeds were used to pay off a "First Fidelity Mortgage." *Id.* The trustee sought to avoid the $4,000,000 transaction as a fraudulent transfer under sections 548 and 544 of the Bankruptcy Code and N.J.S.A. 25:2–1 et seq., asserting that First Fidelity "applied $4,000,000 of the proceeds of the sale of the golf course, which allegedly belonged to PNY, to satisfy Mulvihill's other obligations to First Fidelity." *Id.* at 289 (Mulvihill was one of the individual defendant's who was a shareholder and alleged director, and CEO of PNY).

First Fidelity moved for dismissal of the complaint, asserting that, "because a hypothetical unsecured creditor could not avoid the sale because the creditor's cause of action was extinguished prior to its being brought, the Trustee likewise may not bring the case of action." *Id.* at 293. As stated above, the Court denied First Fidelity's motion to dismiss in *Gibbons* because, under the specific facts, N.J.S.A. § 25:2–31 conflicted with federal bankruptcy law, "including § 546 of the Bankruptcy Code" which authorizes a trustee to bring an avoidance action within two years after being appointed.[10]

 Here, it is not entirely clear that the "specific facts" place N.J.S.A. § 25:2–31 or Fla. Stat. Ann. § 726.110 in conflict with the Bankruptcy Code. As Defendant's counsel admits:

> [t]he one (1) year 'safety web' provisions of the applicable statute(s), as well as section 546(a) of the Bankruptcy Code, however, may save the Trustee and this proceeding from simply being time barred. It appears that due to the April 10, 1998 Court holiday, the Trustee's filing on April 13, 1998 would cover the very last day of the one year period running from his appointment.

January 28, 1999 Letter from Eric Sleeper, Esq. to Court, at p. 3.

This court agrees and finds the Trustee timely commenced this action under N.J.S.A. 25:2–31(a), Fla. Stat. Ann. § 726.110 and 11 U.S.C. § 546.

 It would be inappropriate for the Court to decide on a motion to dismiss whether Defendant's transfer of the remainder of his interest in the Florida property to his wife was a fraudulent conveyance entitling creditors of Halpert & Co. to bring an avoidance action. Such a decision would require making factual inquiries into whether Defendant intended to hinder, delay, or otherwise defraud the creditors of Halpert & Co. *See e.g. United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1304 (3d Cir.1986), cert. denied, 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987)(Fraudulent intent is a question of fact). Additionally, a transfer of property to a relative is "subject to close scrutiny, and 'the relationship of the parties in conjunction with the other circumstances will often make the [plaintiff's] case notwithstanding the absence of direct evidence of fraud.'" *In re Loeber*, 12 B.R. 669, 675 (Bankr.D.N.J.1981)(quoting 4 Collier on Bankruptcy, ¶ 548.02, p. 548–39). "Other circumstances" which the Court may consider include the consideration exchanged in the challenged transfer and whether the exchange was made in good faith. *See United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1296–99 (3d Cir.1986); *cert. denied McClellan Realty Co. v. United States*, 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987)(upholding district court decision that the defendant lender "did not act in good faith because it was aware, first, that the exchange would render [the debtor] insolvent, and second, that no member of the [debtor] would receive fair consideration").

Accordingly, since ruling on whether the transfer of Defendant's interest in the Florida property to his wife, Linda Halpert, will require such factual inquires, the Court denies Defendant's motion to dismiss as to him the remainder of the Trustee's Complaint. Likewise, whether the Florida Homestead Exemption would be in conflict with the Bankruptcy Code is also an issue that can only be resolved by an

---

10. Section 546 of the Bankruptcy Code provides, in pertinent part that:

(a) An action or proceeding under § 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
(1) the later of—
(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202 or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
(2) the time the case is closed or dismissed.
11 U.S.C. § 546(a).

inquiry into the "specific facts" of this case.

### Florida Homestead

■ The Trustee asserts that since the Florida homestead exemption [11] is an affirmative defense, it cannot be the proper basis for dismissal of the Complaint or any count in the Complaint. See Trustee's Brief, at 26. On a Rule 12(b)(6) motion, "an affirmative defense, such as the statute of frauds ... is appropriately considered only if it presents an insuperable barrier to recovery by the plaintiff." *Flight Systems, Inc. v. Electronic Data Systems Corp.*, 112 F.3d 124, 127 (3d Cir. 1997) (citation omitted); *see also ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859, 862 (3d Cir.1994) (citations omitted)(vacating and remanding dismissal of lawsuit because granting Rule 12(b)(6) motion where formation of a contract is the issue "would derail the plaintiff's case pre-pleading and allow the defendant to defeat a cause of action on an oral contract before the plaintiff has an opportunity to seek an admission that a contract existed"); *but see Davis v. Grusemeyer*, 996 F.2d 617 (3d Cir.1993)(affirming 12(b)(6) dismissal of complaint as being barred by statute of limitations).

■ Initially, the Court notes that the Florida Homestead Exemption is a creation of state law and may be superceded by the Bankruptcy Code should the facts of this case warrant it. *See Gibbons*, 199 B.R. at 295–98; *citing Witco v. Beekhuis*, 38 F.3d 682, 687 (3d Cir.1994)("federal law may ... pre-empt state law to the extent it actually conflicts with federal law"). While Defendant's citations to decisions of Florida's Supreme Court and the District Courts of Florida are useful in determining whether the exemption applies here, these cases are not authorita-tive as to the application of sections 544, 546, or 548 of the Bankruptcy Code.

Defendant argues that the Florida Homestead Exemption applies "even where it [is] demonstrated that the home-owner—debtor fraudulently converted nonexempt assets to acquire exempt property." Def.'s Brief, at 19 (*citing In re Michael S. Statner*, 212 B.R. 164, 169 (Bankr.S.D.Fla.1997); *In re Clements*, 194 B.R. 923, 925 (Bankr.M.D.Fla.1996); *In re Lane*, 190 B.R. 125 (Bankr.S.D.Fla.1995); *In re Popek*, 188 B.R. 701 (Bankr.S.D.Fla.1995)(additional citations omitted)). The *Statner* court upheld a homestead exemption even though the homeowner-debtor had fraudulently transferred assets to acquire the property and granted summary judgment dismissing the relevant count of the complaint. *See Statner*, 212 B.R. at 168–69. However, the *Statner* court added that "as noted in *In re Clements*, 194 B.R. 923 (Bankr.M.D.Fla. 1996), creditors are not without their rights to pursue other remedies such as objecting to discharge, seeking dismissal of the case, or filing avoidance actions." *Id.* at 169.

■ Thus, while a Trustee may not be able to object to a homestead exemption on Florida property, nothing prevents a Trustee from seeking to avoid a transfer as fraudulent or to prevent a debtor's discharge should debtor file for bankruptcy later. Indeed, the district court for the Southern District of Florida denied the discharge of a debtor on the grounds that the debtor transferred assets with the intent to defraud a specific creditor. *See In re Pomerantz*, 215 B.R. 261, 264 (Bankr. S.D.Fla.1997)(court found that debtor's transfer of all or substantially all of her interest in non-exempt property into an exempt homestead shortly before losing a

---

11. Article 10, Section 4 of the Florida Constitution provides:

There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assess-ments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for the house, field or other labor performed on the realty . . .

state court case to a creditor for breach of contract was done with the intent to defraud the plaintiff). In so holding, the *Pomerantz* court stated that:

> [t]he Court is cognizant of the line of cases which protect the homestead exemption provided under the Florida Constitution Article X Section 4. *See e.g. Bank Leumi Trust Co. of New York v. Lang,* 898 F.Supp. 883 (S.D.Fla.1995); *In re Clements,* 194 B.R. 923, 925 (Bankr.M.D.Fla.1996); *In re Lane,* 190 B.R. 125 (Bankr.S.D.Fla.1995); *In re Popek,* 188 B.R. 701 (Bankr.S.D.Fla. 1995); *In re Blum,* 41 B.R. 816 (Bankr. S.D.Fla.1984); *In re Levine,* 40 B.R. 76 (Bankr.S.D.Fla.1984). However, this proceeding is not about the sanctity of the Florida homestead exemption; it is about fraud under § 727(a)(2)(A).[12]

*Id.* at 264. Likewise, this Court is not concerned so much with the "sanctity of the Florida homestead exemption," as it is with the alleged fraudulent transfer by Defendant of the remainder of his interest in the Florida property to his wife.

Here, the transfer of Defendant's remaining interest in the Florida property to his wife, who is now the sole owner of the Florida property, was done in 1992. The numerous complaints filed against Halpert & Co. began in or about 1996. The Trustee, at trial, must prove that Defendant had the requisite intent to defraud creditors by transferring his interest in the Florida property to his wife five years before Halpert & Co. filed for relief under Chapter 11. This is a question of fact that the Trustee is entitled to attempt to prove at trial. At the very least, it is a matter not appropriate for dismissal before all discovery on the issue has been conducted.

The Trustee also asserts that Defendant is a resident of New Jersey and

thus may not avail himself of the Florida homestead exemption. See Trustee's Brief, at 26. Defendant asserts that he transferred his interest · in the Florida property to his wife for estate planning purposes following the advice of Alan Halpert's estate and tax law attorney. Def.'s Brief, at 21. *See* Certification of Leonard J. Witman, Esq., filed June 4, 1998. As the Trustee points out, however, "Mr. Halpert's assertion of his good faith touches upon the issue of his intent, which is a question of fact" that may not properly be disposed of on a motion to dismiss. Trustee's Brief, at 27; *see also United States v. Tabor Court Realty Corp.,* 803 F.2d 1288, 1304 (3d Cir.1986), cert. denied, 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987)(Fraudulent intent is a question of fact). This Court agrees.

## CONCLUSION

Accordingly, and for those reasons stated above, the Court DENIES Defendant Alan P. Halpert's Motion to Dismiss the causes of actions in Trustee's Complaint As To Him in regards to all counts of the Trustee's Complaint and GRANTS the Trustee's Motion to Amend the First Amended Complaint. The Trustee is authorized to file and serve the Second Amended Complaint. An order shall be submitted in accordance with this opinion.

---

**12.** 11 U.S.C. § 727(a)(2)(A) provides in pertinent part that a debtor shall be granted a discharge unless:

> [T]he debtor, with intent to hinder delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> (A) property of the debtor, within one year before the date of the filing of the petition.